# FIDELITY MUTUAL LIFE INSURANCE COMPANY *v.* CLARK.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF TEXAS.

No. 25. Argued October 15, 16, 1906.—Decided October 29, 1906.

A man and his sister conspired to defraud an insurance company; the former having insured his life disappeared and the latter as beneficiary filed proof of death, brought suit, and recovered judgment after verdict by a jury; the company defended on ground that insured was alive and claim was fraudulent. The judgment was affirmed and the company paid the money into court. In order to have the suit prosecuted the beneficiary had made contingent fee contracts with attorneys which had been filed and the money was distributed from the registry of the court to her and the various parties holding assignments of interests therein. The insurance company, having afterwards found the insured was alive, sued in equity the beneficiary and also her counsel and their assignees to recover the money received by them respectively. No charge of fraud was made against anyone except the beneficiary, but notice of the fraud was charged against all by virtue of the company's defense. The defendants claimed that under the Seventh Amendment the question of death of person insured could not again be litigated. The bill was dismissed as to all except the beneficiary.

*Held,* as to the defendants other than the beneficiary, that as the action was prosecuted in good faith, whatever notice they may have had by virtue of the company's defense was purged by the verdict, and although they had received their respective shares from the proceeds paid into court it was the same in law as though they had been paid in money directly by the judgment creditor and it could not be recovered.

Whether in view of the Seventh Amendment a Federal court sitting in equity may inquire into whether a judgment based on a verdict was obtained by fraud and, if so found, set the verdict aside, argued, but not decided.

THE facts are stated in the opinion.

*Mr. Maurice E. Locke* and *Mr. Eugene P. Locke* for appellant:

The Circuit Court and this court are not deprived of jurisdiction to entertain plaintiff's bill by the provision in the Seventh Amendment that no fact tried by a jury shall be otherwise reëxamined by any court of the United States than according to the rules of the common law, as under the common law, as it was understood in England at the time of the adoption of the Constitution, equity could examine into whether a judgment, based on a verdict, had been fraudulently obtained. 3 Blackstone's Comm. *53; Hallam's Con. Hist. of England, Chap. 6, p. 247; 1 Campbell's Lives of the Chief Justices, 332; 2 Campbell's Lives of the Chancellors, 362; 3 Pomeroy's Eq. Jurisp., § 1360; 1 Story's Eq. Jurisp., § 51; 1 High on Injunctions, § 112; Lord Ellesmere's pamphlet, "The Privileges and Prerogatives of the High Court of Chancery."

There are no American cases, state or Federal, where the right of a court of equity to reëxamine for fraud a judgment or a verdict at law was the matter under consideration, which hold that courts of the United States sitting in equity had not that power.

It has been held that the first clause of the Seventh Amendment, correctly interpreted, cannot be made to embrace the established, exclusive jurisdiction of courts of equity, nor that

which they have exercised as concurrent with courts of law. *Shields* v. *Thomas*, 18 How. 253; *Waring* v. *Clarke*, 5 How. 441; *Barton* v. *Barbour*, 104 U. S. 126. See also *Home Life Ins. Co.* v. *Dunn*, 19 Wall. 214; *Ocean Ins. Co.* v. *Fields*, 2 Story, 59.

In a case in a Federal court, the judge may call in a jury to find upon issues, or may have a jury empaneled upon the law side of the court and its verdict certified to him, and in either case the verdict is not binding on him but advisory only. This accords with the long established practice of courts of chancery, but is apparently contrary to the letter of the Seventh Amendment, and justified only by historic interpretation. See *Prout* v. *Roby*, 15 Wall. 472; *Garsed* v. *Beall,* 92 U. S. 684; *Wilson* v. *Riddle,* 123 U. S. 608; *Idaho Land Co.* v. *Bradbury*, 132 U. S. 509; and as to effect of jury trials in admiralty cases see *Boyd* v. *Clark*, 13 Fed. Rep. 908.

For other cases in which a verdict was reviewed for fraud see *Young* v. *Sigler*, 48 Fed. Rep. 182; *Crim* v. *Handley*, 94 U. S. 652; *Stanton* v. *Embry*, 93 U. S. 548; *S. C.*, 46 Connecticut, 65 and 595; *Embry* v. *Palmer*, 107 U. S. 3; *Phillips* v. *Negley*, 117 U. S. 665.

The fraud of the original conspirators is not the same fraud which is the basis of this suit, and this distinguishes the case from *United States* v. *Throckmorton*, 98 U. S. 61, and *United States* v. *Flint*, 4 Sawyer, 42. See also *Marshall* v. *Holmes*, 141 U. S. 589; *Graver* v. *Fawrot*, 64 Fed. Rep. 241; 73 Fed. Rep. 1022; 76 Fed. Rep. 267; 162 U. S. 435; *Maddox* v. *Apperson*, 14 Lea, 596, 615; *Marine Ins. Co.* v. *Hodgson*, 7 Cr. 332; *N. Y. Life Ins. Co.* v. *Bangs*, 103 U. S. 780. A court of equity can and will grant relief under the circumstances of this case. *Coddrington* v. *Webb*, 2 Vernon, 240; *Wonderly* v. *Lafayette Co.*, 150 Missouri, 635; *Guild* v. *Phillips*, 44 Fed. Rep. 461; *Trefz* v. *Knickerbocker Life Ins. Co.*, 8 Fed. Rep. 177; *Stowell* v. *Eldred*, 26 Wisconsin, 504; *State* v. *Fraker*, 148 Missouri, 143.

The bill does not come too late, and the situation demands equitable relief.

If one person gets possession of another's money by fraud, the law raises a promise to return it, and upon such implied promise an action may be maintained. Bishop on Contracts, § 226; *Moses* v. *Macferlan,* 2 Burrows, 1005; *Buller* v. *Harrison,* 2 Cowper, 565; *N. W. Mutual Life Ins. Co.* v. *Elliott,* 5 Fed. Rep. 225; *National Life Ins. Co.* v. *Minch,* 53 N. Y. 144; *Gaines* v. *Miller,* 111 U. S. 395; *Merryfield* v. *Wilson,* 14 Texas, 224; *Michigan* v. *Phœnix Bank,* 33 N. Y. 9.

The fraud in this case consisted in obtaining by wrongful means a judgment that William A. Hunter had died, thereby rendering the plaintiff liable to Mrs. Smythe. Whether he had so died was the question directly in issue in the action at law, and the verdict and judgment therein are conclusive between the parties and privies, save upon such direct or collateral attack as may be permissible under the circumstances. Bigelow on Estoppel, 90; *Outram* v. *Morewood,* 3 East, 346; *Hazen* v. *Reed,* 30 Michigan, 331; *Monks* v. *McGrady,* 71 Texas, 134; *McGrady* v. *Monks,* 20 S. W. Rep. 959.

The Federal courts and the courts of all the States in which the various defendants reside agree in holding that a judgment cannot be collaterally attacked for fraud. *Christmas* v. *Russell,* 5 Wall. 290; *Peninsular Iron Co.* v. *Eells,* 68 Fed. Rep. 24; *K. C., Ft. S. & M. K. Co.* v. *Morgan,* 76 Fed. Rep. 429; *Lake County* v. *Platt,* 79 Fed. Rep. 567; *Maddox* v. *Summerlin,* 92 Texas, 483; *Anderson* v. *Anderson,* 8 Ohio St. 109; *State* v. *Ross,* 118 Missouri, 23.

The defendants Clark, Culberson, Spoonts and Phillips Investment Company are all privies to the judgment by assignment of interests in its subject-matter, and are protected by it to the same extent as Mrs. Smythe. Bigelow on Estoppel, 142–149; 2 Black on Judgments, §§ 549–550; *Lake Co.* v. *Platt,* 79 Fed. Rep. 567; *Porter* v. *Bagby,* 50 Kansas, 412.

Therefore as to all the defendants equitable relief is necessary and proper in the case, if the facts are sufficient, as they are, to warrant interfering with the judgment.

When property has been obtained by fraud, its true owner

may recover it from any person except a *bona fide* purchaser for value, without notice. *Buller* v. *Harrison*, 2 Cowper, 565; *Thurston* v. *Blanchard*, 22 Pickering, 18; *Devoe* v. *Brandt*, 53 N. Y. 462.

The exception relates only to those kinds of property whose purchasers for value are protected by the policy of the law from equities outstanding against their vendors of which they had no notice. A judgment is not such property. The assignee of a judgment takes it subject to all equities existing between the litigants, whether he had notice of the same or not, and regardless of the consideration paid therefor. 2 Black on Judgments, §§ 953 and 955; 1 High on Injunctions, § 190; *Taylor* v. *Nash. & Chat. R. Co.*, 86 Tennessee, 228; *Blakesley* v. *Johnson*, 13 Wisconsin, 592; *Rock Rapids* v. *Schreiner*, 46 Iowa, 172; *Rea* v. *Forrest*, 88 Illinois, 275; *Northam* v. *Gordon*, 23 California, 255; *Weber* v. *Tschetter*, 1 S. D. 205; *Ellis* v. *Kerr* (Tex. Civ. App.), 23 S. W. Rep. 1050 and 32 S. W. Rep. 444; *Wright* v. *Treadwell*, 14 Texas, 255; *Thresher Mfg. Co.* v. *Holz*, 10 N. D. 16; *Brisbin* v. *Newhall*, 5 Minnesota, 273; *McJilton* v. *Love*, 13 Illinois, 486; *Wright* v. *Levy*, 12 California, 257; *Jeffries* v. *Evans*, 6 B. Mon. 119; *Devoll* v. *Scales*, 49 Maine, 320; *Padfield* v. *Green*, 85 Illinois, 529; *Mulford* v. *Stratton*, 41 N. J. Law, 466; *Magin* v. *Pitts*, 43 Minnesota, 80; *Brewing Co.* v. *Hansen*, 104 Iowa, 307; *Ricaud* v. *Alderman*, 132 N. Car. 6; *Frankel* v. *Garrard*, 160 Indiana, 209.

As to policies of insurance and orders drawn against specific funds see 1 May on Ins., § 386; Joyce on Ins., § 2326; 7 Cyc. 578; 3 Pomeroy's Eq. Jurisp., § 1280 *et seq; Bank* v. *Yardley*, 165 U. S. 634; *Brill* v. *Tuttle*, 81 N. Y. 454.

The appellees hold under assignments.

Appellees' position that the assignments can be ignored, and the case be dealt with as if the facts were that Mrs. Mettler collected the amount of the judgment obtained by her against the insurance company, and then paid to her attorneys the fees owing by her to them for their professional services cannot be maintained. No portion of the avails of the judg-

ment ever passed through Mrs. Mettler's hands, save the net sum of $11,160.50, sent to her by Mr. Clark. Each of the appellees received his part of the fund directly from the court, in the form of a non-negotiable order in his own favor, drawn on the United States depository in which the fund was deposited, and payable out of that specific fund. The clerk and the judge, who respectively signed and countersigned the orders, were in no sense the agents of Mrs. Mettler. They were acting only in their official capacity, receiving and holding the fund in the name of the court, and distributing it among its apparent owners.

None of the appellees knew at the time of acquiring his interest that Hunter was not dead. But they all knew that the insurance company claimed that he was living and that it denied liability. The notice which the lawyers had was not in the nature of hearsay. They were dealing directly with, and were seeking to overthrow, the company's contention that Hunter was still alive.

A statement by one person or his representative to another that the former has or claims a certain right is actual notice to the latter of that right. Notice and knowledge are two very different things; and a man may have actual notice sufficient for all legal purposes of something which he does not know and which even in the best of faith he wholly disbelieves.

As a general proposition the rendition of professional services by a lawyer, or his contract to render such services, may form a valuable consideration for property conveyed to him as compensation therefor. But more than this is needed to block the pursuit of the real owner of the property seeking to recover it.

*Mr. F. M. Etheridge*, with whom *Mr. W. M. Alexander, Mr. Lauch McLaurin, Mr. George Thompson* and *Mr. Rhodes S. Baker* were on the briefs, for appellees:

A Circuit Court of the United States sitting in equity and

deriving its powers from the laws of the United States will not reëxamine an issue of fact, which has been already finally determined at law after a plenary hearing before a jury, constituted in accordance with the guaranties of the Constitution of the United States, and upon such reëxamination. annul such decision at law, on the ground that an improper conclusion was reached, and substitute its own judgment for that of the law tribunal. *Capital Traction Co.* v. *Hof*, 174 U. S. 1; *United States* v. *Throckmorton*, 98 U. S. 61, 68; *Green* v. *Green*, 2 Gray, 361.

The fraud complained of is, as matter of necessity, intrinsic. The insurance company was not misled nor deceived; it was not kept from court; its attorneys were incapable of lack of fidelity to its interests, and displayed conspicuous zeal in their defense of the case. It knew that the issue was to be tried before the action was even commenced. This differentiates this case from the cases cited by appellant.

Appellants now claiming that the appellees are liable for wrongful conversion cannot recover under any theory of trusteeship or notice. *Bank of U. S.* v. *Bank of Washington*, 6 Peters, 8; *Holly* v. *Missionary Society*, 180 U. S. 284; *Merchants Ins. Co.* v. *Abbott*, 131 Massachusetts, 397; *Walker* v. *Conant*, 69 Michigan, 321; *Langley* v. *Warner*, 3 N. Y. 327; *Stephens* v. *Board of Education*, 79 N. Y. 183; *Justh* v. *National Bank*, 56 N. Y. 483; *Webb* v. *Burney*, 70 Texas, 322; *Rector* v. *Fitzgerald*, 59 Fed. Rep. 808; *Eylar* v. *Eylar*, 60 Texas, 315; *McCausland* v. *Pundt*, 1 Nebraska, 211; *Steele* v. *Renn*, 50 Texas, 467; *Wadhams* v. *Gay*, 73 Illinois, 415; *Glover* v. *Coit*, 36 Texas Civ. App. 104; *Gould* v. *McFall*, 118 Pa. St. 455; *Macklin* v. *Allenberg*, 100 Missouri, 337.

Wrongful conduct of the party sued is an essential element of his liability, and without such showing he cannot be held. 2 Pomeroy's Equity, § 1051. *United States* v. *Detroit Timber &c. Co.*, 200 U. S. 321; *Schneider* v. *Sellers*, 98 Texas, 380, 390.

The facts here show that the claim of the insurance company that Hunter was alive, and that Mrs. Mettler was guilty

of fraud, were settled by the judgment of this court adverse to such contentions; before the insurance company paid the amount of the judgment, and that the respondents here obtained none of the company's funds until the alleged duty of inquiry imputed to them had been prosecuted to the very highest source and exploded.

The right of one who has paid funds under a judgment to an order of restitution on annulment of the judgment is restricted to parties to the record.

Where the funds have once become lawfully titled in an outsider, the party injured cannot follow them, and by his action make illegal that which had a lawful inception. *Winston* v. *Masterson*, 87 Texas, 200; *McDonald* v. *Napier*, 14 Georgia, 89; *Little* v. *Bunce*, 7 N. H.. 485; *Wright* v. *Aldrich*, 60 N. H. 161; *Florida Railway Co.* v. *Bisbee*, 18 Florida, 66; *Kalmbach* v. *Foote*, 49 N. W. Rep. 132; *Gray* v. *Alexander*, 7 Humph. 16; *Wright* v. *Aldrich*, 60 N. H. 485; *Costigan* v. *Newlands*, 12 Barlows, 456; *Butcher* v. *Henning*, 35 N. Y. Supp. 1006.

In this case it was a voluntary payment, made not under duress, or under mistake of law or fact, and the plea of duress could not prevail in this proceeding, even if the equities of these respondents did not so greatly preponderate. *Gould* v. *McFall*, 118 Pa. St. 455; *Dickerson* v. *Lord*, 21 Louisiana, 338; *McDonald* v. *Napier*, 14 Georgia, 89; *Kalmbach* v. *Foote*, 49 N. W. Rep. (Mich.) 132; *Butcher* v. *Henning*, 35 N. Y. Supp. 1006; *Radich* v. *Hutchins*, 95 U. S. 210; *Elston* v. *Chicago*, 40 Illinois, 514; *Groves* v. *Sentell*, 66 Fed. Rep. 179.

The cases applicable to choses in action do not apply. The payment was made not by transfer of interest in the cause of action, but by money which is property of the highest negotiability. Appellants seek to reopen the payment and recover, not the judgment which has been discharged, but money which was paid. *People's Bank* v. *Bates*, 120 U. S. 556; *Youngs* v. *Lee,* 12 N. Y. 551; *Meades* v. *Bank*, 25 N. Y. 143; *Padgett* v. *Lawrence*, 10 Paige, 170;

*Struthers* v. *Kendall*, 47 Pa. St. 214; *Goodman* v. *Simon*, 20 Howard, 343.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity, brought in the Circuit Court to enjoin the setting up of a judgment at law recovered in the same Circuit Court upon three policies of life insurance, on the ground that the judgment was obtained by fraud. It also seeks to compel the plaintiff in the action at law, and other parties to whom interests in the policies were assigned, to repay the sums which they received upon them. The judgment was rendered in a case which came before this court, and the dramatic circumstances of the alleged death are set forth in the report. *Fidelity Mutual Life Association* v. *Mettler*, 185 U. S. 308. The appellant is the plaintiff in error in that case, having changed its name. After the date of the judgment the appellant discovered that Hunter, the party whose life was insured, was alive, and that the recovery was the result of a deliberate plot. Thereupon it forthwith brought this bill. One of the defenses set up and argued below and here was that by the Seventh Amendment to the Constitution no fact tried by a jury shall be otherwise reëxamined in any court of the United States than according to the rules of the common law. On the facts alleged and proved the Circuit Court entered a decree against the plaintiff at law, Mettler, now Smythe, but dismissed the bill as against the assignees of partial interests in the policies. The insurance company appealed to this court.

The material facts are these. By way of a contingent fee for the services in collecting the insurance, Mrs. Mettler assigned to the present defendant Clark and his partners one-third interest in the policies, with an additional sum in case statutory damages and attorney's fees were recovered. This afterwards came to Clark alone. Clark and Mrs. Mettler assigned five hundred dollars each, from their respective

interests to the defendant Culberson, as a contingent fee for argument and services in this court. Clark also employed the defendant Spoonts, it would seem on a contingent fee. Finally he mortgaged his right to the Phillips Investment Company. When the judgment was recovered, before execution, the insurance company paid the amount ($24,028.25) into court. Out of this the clerk paid to Mrs. Mettler $11,-616; to Clark, $8,346; to Spoonts on Clark's order, $1,500; to Culberson, $1,026, and to the Phillips Investment Company, $1,540.24. It is these sums, other than that paid to Mrs. Mettler, that are in question here.

It will not be necessary to consider the constitutional question under the Seventh Amendment, to which we have referred, or some other questions which were raised, because we are of opinion that the appellees are entitled to keep their money, even if the judgment can be impeached for fraud. They all got the legal title to the money which was paid to them, or, what is the same thing, got the legal title transferred to their order. That being so, the appellant must show some equity before their legal title can be disturbed. It founds its claim to such an equity on the mode in which the judgment which induced it to part with the title to its money was obtained. But fraud, of course, gives rise only to a personal claim. It goes to the motives, not to the formal constituents of a legal transfer, *Rodliff* v. *Dallinger*, 141 Massachusetts, 1, 6, and the rule is familiar that it can affect a title only when the owner takes with notice or without having given value. *Fletcher* v. *Peck*, 6 Cranch, 87, 133; 2 Williams, Vendor & Purchaser, 674. See *The Eliza Lines*, 199 U. S. 119, 131. The question is whether the appellant can make out such a case as that.

It is said that the title of the appellees stands on the judgment, and that if the judgment fails the title fails. But that mode of statement is not sufficiently precise. The judgment hardly can be said to be part of the appellee's title. It simply afforded the appellant a motive for its payment into court.

The appellees derive their title immediately from Mrs. Mettler, and remotely from the act of the appellant. They stand exactly as if the appellant had handed over the twenty-four thousand dollars in gold to her and she thereupon had handed their proportion to them. We are putting no emphasis on the fact that the thing transferred was money. The appellees knew from what fund they were paid, from what source it came, and why it was paid to Mrs. Mettler. We are insisting only that the title had passed to them. But we repeat that, as the title had passed, the appellant must find some equity before it can disturb it, and we now add that, as there is no question that the appellees took for value, that is in payment for their services, or, if it be preferred, in performance of Mrs. Mettler's contingent promise, the equity must be founded upon notice.

The notice to be shown is notice of the fact that the judgment which induced the appellant's payment was obtained by fraud. But notice cannot be established by the mere fact that while the appellees held an interest in the policies only they were assignees of choses in action, and took them subject to the equities. That is due to a chose in action not being negotiable. It does not stand on notice. The general proposition was decided in *United States* v. *Detroit Lumber Co.*, 200 U. S. 321, 333, 334, and *United States* v. *Clark*, 200 U. S. 601, 607, 608, and earlier in *Judson* v. *Corcoran*, 17 How. 612, 615, and, we have no doubt, is the law of England. Of course the assignee of an ordinary contract can only stand in the shoes of the party with whom the contract was made. In the discussions of the rule which we have seen, we have found no other reason offered, as no other is necessary. But the assumption of the good faith of the assignee occurs in more cases than one.

The principle which we apply is further illustrated by the priority given to the later of two equitable titles, if the legal title be added to it, 2 Pomeroy, Eq. 3d ed., §§ 727, 768, by the doctrine of tacking, and, in some degree, by the great dis-

tinction recognized in other respects between the holder of title under an executed contract and a party to a contract merely executory. See 1 Williams V. & P. 540, and cases cited. We may add further that, even if we were wrong, the equities to which an assignee takes subject are equities existing at the time of the assignment, 1 Williams V. & P. 584, and that the notice with which he is supposed to be charged as an assignee can be of nothing more. Therefore merely as assignees the appellees had not notice of the as yet unaccomplished fraud in obtaining the judgment. The policies were honest contracts and it was an interest in the policies which was assigned, at least to Clark.

The appellant is driven, therefore, to contend, as it did contend at the argument, that notice of the denial that Hunter was dead, in the suit on the policy, was notice of the fraud. But it is admitted that the appellees all acted in good faith; that they believed the plaintiff's case. In such circumstances, even if the answer had gone further, and had charged the plaintiff with all that the present bill charges against her, when a jury had decided that the charges were groundless, a judgment had been entered on the verdict, and the insurance company had accepted the result by paying the money into court without waiting for an execution, it would be impossible to say that the supposed notice was not purged. The appellees were not bound to contemplate future discoveries of what they honestly believed untrue, and a bill to impeach the final act of the law. See *Bank of the United States* v. *Bank of Washington,* 6 Peters, 8, 19.

*Decree affirmed.*

MR. JUSTICE HARLAN and MR. JUSTICE WHITE dissent.

MR. JUSTICE MCKENNA took no part in the decision of this case.