## International Packing Company, Plaintiff in Error, v. David K. Tone et al., Defendants in Error.

### Gen. No. 15,792.

1. ASSUMPSIT—*when peremptory instruction proper.* If the evidence for the plaintiff does not establish joint liability upon the part of the defendants a peremptory instruction in favor of both defendants is proper notwithstanding no plea denying joint liability has been interposed.

2. ASSUMPSIT—*when joint liability not established.* Where, after collection, a judgment at law is reversed, no joint liability to return the proceeds of the collection exists against the party who received the same and his attorney who was not an assignee to whom a part thereof was disbursed.

3. ASSUMPSIT—*when money not tortiously obtained.* Held, that money was not wrongfully or tortiously obtained by a lawyer who in the absence of any stay order or supersedeas enforces a judgment of a court of competent jurisdiction in favor of a client against the judgment debtor, even though there may be then pending a writ of error which afterwards eventuates in a reversal.

Assumpsit. Error to Superior Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed November 2, 1911. *Certiorari* denied by Supreme Court (making opinion final).

F. J. CANTY, R. J. FOLONIE and E. E. GRAY, for plaintiff in error.

THOMAS J. SYMMES, for defendants in error; DAVID K. TONE, of counsel.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

A judgment of *nil capiat* and for costs was, March 2, 1909, rendered by the Superior Court of Cook county against the plaintiff, International Packing Company (who sued for the use of the London Guarantee and Accident Company, Limited), in favor of the defendants David K. Tone, Morse Ives, H. M. Ashton and John Cichowicz.

The suit was in assumpsit and based on the following facts, which appeared in the evidence:

May 2, 1900, "H. M. Ashton" and "Ives & Tone," as plaintiff's attorneys, filed a *praecipe* to the summons in the office of the clerk of the Superior Court of Cook county, in behalf of John Cichowicz, by which *praecipe* suit was begun by said John Cichowicz against the International Packing Company in trespass on the case, the damages being laid at $10,000. Through the same attorneys, June 21, 1900, Cichowicz filed a declaration in the said suit, which showed his cause of action to be a fall into a mass of hot water, occasioned, as the declaration alleged, by the negligence of the International Packing Company. On the first call of the case, July 10, 1900, the defendant did not appear and default was entered against it and a judgment rendered for $5,000 and costs in favor of Cichowicz. Afterward, however, the defendant was let in to plead on the payment of $100 to the plaintiff's attorney and $250 to the plaintiff, to be deducted from any recovery, if one was had, the judgment to stand as security. The cause was submitted to a jury, which found the International Packing Company guilty and assessed the plaintiff's damages at $3,000. February 14, 1902, a judgment order on this verdict was entered. It provided that the judgment of July 10, 1900, for $5,000 should stand, but be satisfied in full of record upon the payment of $2,650. From this judgment order an appeal seems to have been prayed but not perfected.

March 20, 1902, an execution requiring the collection of $2,650 damages and $11.35 costs was issued and given to the sheriff, who proceeded under it to levy on certain real estate in Cook county belonging to the International Packing Company, to advertise the same for sale, and eventually to sell the same. It was sold for $2,990 to one Charles F. Wenham on July 15, 1902. The sheriff made due return of the writ of execution as satisfied by this sale. In the return he recited the sale, and that after deducting his fees, amounting to

$60.67, he had paid the plaintiff's attorney the balance, $2,929.33. On the execution offered in evidence in the case at bar, appeared the receipt of "David K. Tone, Attorney for the Plaintiff," of $2,935.83, "in full satisfaction of the within execution and advance costs, this 15th day of July, 1902," and the receipt of C. F. Wenham, dated July 23, 1902, for the certificate of sale of the premises sold.

Mr. Tone admitted, in testifying in the case at bar, the receipt by him of the money thus receipted for on the execution, and also the receipt of the $100 attorney's fees, and $250 for the plaintiff, which, by order of court, were paid on the opening of the default judgment for pleading.

Mr. Tone testified also that he was present at the execution sale.

July 28, 1902, the International Packing Company as plaintiff in error sued out from this court a writ of error directed to the Superior Court in review of the proceedings in said cause of Cichowicz against the International Packing Company.

On March 19, 1903, this court reversed the judgment of the Superior Court without remanding the cause, finding that the plaintiff Cichowicz had voluntarily assumed the risk of the danger through which he was injured. This judgment of the Appellate Court the Supreme Court, on further appeal, affirmed. On the reversal of the judgment of the Superior Court a motion was made in the Superior Court to set aside the execution sale, which was denied. (This action of the Superior Court was, the reports show, reversed by this court and on further appeal affirmed by the Supreme Court.) On this denial the International Packing Company, through attorneys at law representing it, redeemed from the execution sale the premises sold by paying to the sheriff $3,171.05. It procured the money from The London Guarantee & Accident Company, (Limited), which had issued an employer's liability insurance policy to the Packing Company.

In February, 1905, the International Packing Company brought suit against David K. Tone and Morse Ives (who in 1900, at the time of the commencement of the suit for Cichowicz and for some undisclosed length of time thereafter were members of the law firm of Ives & Tone), Henry M. Ashton and John Cichowicz.

There was confusion in the pleadings which might lead to the conclusion that the cause had been tried only on the common counts, but as no question is raised as to the formal matters and as the ground of the plaintiff's claim is stated in the first count of its amended declaration, we briefly abstract its allegations, which are that the suit above described was begun by Chicowicz through Ives, Tone and Ashton as his lawyers; that it proceeded to judgment and execution sale as above set forth; that Wenham, who purchased the real estate of the International Packing Company at that sale, did so at the instance and request of Tone, Ashton and Ives; that on or about June 15, 1900, John Cichowicz assigned one-half of any recovery that he might make in his action to Ives, Tone and Ashton; that on February 14, 1902, he assigned the judgment to the defendant Tone for the use of himself and the other defendants; that Tone took said judgment with full knowledge of all the facts alleged in this declaration; that the judgment against the International Packing Company was reversed as before described; that by virtue of the sale of real estate under the execution, $2,990 was paid to Tone for himself and the other defendants; that at the time the said Tone received said $2,990 he knew that a writ of error had been sued out and was pending in the Appellate Court, *and that under the laws of the land said judgment of the Superior Court must be reversed;* that all the defendants knew that said writ was sued out; that the proceedings on the writ of error cost more than $2,000; that the International Packing Company had assigned its right of action against the defendants to the London Guarantee and Accident Company, (Lim-

ited); that the International Packing Company had duly redeemed the premises sold by paying to the sheriff $3,169.40, and that the defendants were liable to the plaintiff for it.

The only pleading to the declaration (which also contained the common counts) except an undisposed of demurrer to this special count, was the general issue.

At the trial the only matters not before set forth proven in support of the declaration were, (a) that there was a contract signed by Cichowicz and Ashton before the suit of Cichowicz against the Packing Company was begun, by which it was agreed that Ashton was to have a contingent interest of one-half the recovery in case recovery was had; (b) that at the time the judgment by default for $5,000 was obtained by Cichowicz the following paper was signed and delivered by him:

"July 10, 1900.

Whereas, I am now indebted to Morse Ives and David K. Tone for legal services in the sum of one thousand ($1,000), now to secure the payment of said sum I hereby authorize them to collect a judgment for $5,000 recovered by me against the International Packing Company July 10, 1900, in the Superior Court of Cook County, Illinois, said Ives & Tone to retain said $1,000 out of said judgment when collected, and to pay the balance to me or to my attorney, H. M. Ashton.

JOHN CICHOWICZ."

(c) that at some time, at Ashton's office, Cichowicz received $950 on account of his suit.

Some stress being laid in the arguments in this court on an alleged assignment of the judgment by Cichowicz to the other defendants, or some of them, it may be well to note that we find nothing in the evidence sufficient to establish such an assignment, nor that Ives or Tone had any contract with Cichowicz for a contingent fee. The testimony of Tone is that there was no contract to which he was a party prior to the default. The testimony of Ashton is explicit that the contingent arrangement was between him and Cicho-

International Packing Co. v. Tone, 165 Ill. App. 248.

wicz, and that there was a further general agreement, participated in by Cichowicz, that if Ives and Tone helped in the law suit their fees would be taken care of by Ashton.

Cichowicz, who cannot read English, and says he does not know what was in any paper he signed, did indeed testify that he made a contract "printed on a paper" that he "would get half of the money that would be recovered," and when he was asked by counsel for the plaintiff, "Who did you make that contract with?" answered "The lawyers." The question followed, "Who were they?" and he answered "Ashton and Tone." A legal representative of the Guarantee Company testified also that when he was preparing the motion to set aside the execution sale, he went to Tone's office and that he asked (apparently incidentally) the question of Mr. Tone—Tone being alone —"Do you folks have an assignment of the judgment?" to which Tone answered, "We have a half interest in it."

But the language of Cichowicz in his testimony and of Tone in his conversation is not in its nature sufficient to establish the existence of an assignment of the judgment, or against the more definite statement of Ashton and Tone, a contingent agreement between Cichowicz and any other of the defendants than Ashton. However, we do not deem it highly material, in view of the doctrine laid down by our Supreme Court in Elliot v. Whipple, 1 Scammon 517.

At the close of the plaintiff's testimony, on a motion to that effect by the defendants, the court instructed the jury to find the issues for the defendants, and a verdict was returned in accordance with said instruction. From the judgment rendered on that verdict this writ of error has been prosecuted.

We think the court below was right in excluding the testimony and peremptorily instructing the jury. No other course was proper, unless there was evidence tending to show a joint liability of all the parties de-

fendant. They were sued jointly in *assumpsit* and a verdict or judgment against one or more could not be given unless the plaintiff dismissed against the others. Gould v. Sternburg, 69 Ill. 531; Kingsland v. Koeppe, 137 Ill. 344; Merrifield v. Cottage Piano Co., 238 Ill. 526. Nor, since the plaintiff's evidence shows the whole situation, is this altered by the fact that no one of the parties has put his joint liability in issue by a special plea to that effect. Imperial Hotel Company v. Claflin Co., 175 Ill. 119. Therefore, if we assume the liability of Cichowicz, which is not challenged by the appeal and the argument before us, it does not follow that a judgment could be rendered in this case against him and the others jointly. There was no evidence offered in the cause except on the part of the plaintiff. If that did not tend to show a joint liability on the part of all the defendants, even though it did tend to show several and different liabilities, the ruling of the lower court was, under the authority of the cases we have cited, correct.

We do not think that any joint liability was shown or that any evidence tending to show it was introduced.

If the action rests on the general ground that the defendants are in possession of money had and received for the use of the plaintiff, which seems to us in effect its gist, each of the defendants, Tone, Ives and Ashton, would be liable, if at all, only for the amount received by him out of the money secured by the execution sale under the judgment. This liability would differ as to amount, to say nothing of the time and circumstances under which it arose. Cichowicz's liability would be also on a different basis and for a different amount—we may assume for the whole, in the absence of controlling circumstances to the contrary.

To this proposition the plaintiff in error opposes the theory that the defendants were all principals and all jointly liable, because they all had a hand in securing money compulsorily from the plaintiff in error—money

which it should not have been obliged to pay and which reviewing courts afterwards decided it did not owe.

But we think counsel ignore a distinction vital to the argument. If money is obtained by fraud, extortion or other wrongful compulsion from one, it does not lie in the mouth of any one of persons combining to secure it in this method to claim that he is not liable jointly with the others *in solido* in an action to recover it. But we do not conceive it to be the law that money is wrongfully or tortiously received by a lawyer who, in the absence of any stay order or supersedeas, enforces a judgment of a court of competent jurisdiction in favor of his client against the judgment debtor, even though there may be then pending a writ of error (which is held to be a new suit) in a reviewing court, which afterwards eventuates in a reversal. The plaintiff's declaration asserts that Tone knew on July 15, 1902, "that under the laws of the land the judgment of the Superior Court must be reversed," and it is on this theory in the last analysis that the allegation is made that the money was wrongfully collected by him. We do not think that even "counsel learned in the law" can be presumed to actually know with certainty that a judgment of the Superior Court in a personal injury case, obtained after trial and verdict, must and will be reversed on the ground that the plaintiff assumed the risk, or, that if he does not in fact know, the maxim *"Ignorantia legis neminem excusat"* can be stretched so as to make it constructively a tortious act for him to pursue for his client an unstayed and unsuspended final order of that court. Such a doctrine would be a confusing and dangerous one. Nor is it the law. For illustrations of cases based upon the contrary principle, we might cite, among a multitude, Fidelity Mutual Life Ins. Co. v. Clark, 203 U. S. 64, and McDonald v. Napier, 14 Georgia 89. We shall not discuss the cases cited by appellant in support of the doctrine he urges further than to say that we do not think they overlook or ignore the distinction we make.

It is claimed that there is no evidence that Tone has ever paid over to his client any of the money he receipted for on the execution sale. If it be material, we think the contrary is sufficiently shown by the testimony of Cichowicz—meagre as that is.

The judgment of the Superior Court is affirmed.

*Affirmed.*