**MICHIGAN FIRE & MARINE INS. CO. et al. v. NATIONAL SURETY CORPORATION.**

No. 13149.

Circuit Court of Appeals, Eighth Circuit.

July 10, 1946.

LeRoy Bowen, of Minneapolis, Minn. (Bowen & Bowen, of Minneapolis, Minn., on the brief), for appellants.

F. H. Durham, of Minneapolis, Minn. (Durham & Swanson, of Minneapolis, Minn., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

On March 31, 1941, a fire partially destroyed corn owned by the Commodity Credit Corporation and stored in the Harbor Elevator in Minneapolis, which M. B. Lytle then owned and operated as a terminal elevator.

The National Surety Corporation, as assignee of the proceeds of fire insurance policies held by Lytle, brought this action originally in the District Court of Hennepin County, Minnesota, alleging damages to the corn in the amount of $15,963.78. The insurance companies removed the suit to the federal court on the ground of diversity of citizenship.

In a trial to the court without a jury, the court found for the Surety Corporation and entered judgment against the insurance companies for $1,555.14. All the insurance companies have appealed, with the exception of the Westchester Fire Insurance Company, which has paid its portion of the judgment.

The policies in suit are Minnesota Standard fire insurance policies and the law of Minnesota is controlling.

The fire which caused the damage on March 31, 1941, occurred in the basement of the warehouse. On January 7, 1941, a portion of five floors of one section of the warehouse had collapsed, precipitating the corn into the basement, an unsuitable place for its storage. After the collapse, the Surety Corporation, which was on Lytle's bond as a warehouseman and was liable for any loss suffered by the Commodity Credit Corporation on account of his default, undertook to make the building safe

for the removal of the corn. Prior to the fire of March 31, 1941, some of the corn had been damaged by the collapse of the building, and some by water running into the basement through open windows, and some had run down a sewer in the basement. All of the parties to this action knew of the fire, which had charred a post in the basement and damaged part of the corn. The fire was not extensive, and fifty gallons of water were sufficient to extinguish it. Immediately after the fire, all of the parties agreed that the corn should be salvaged and either delivered to the Commodity Credit Corporation or sold, and that the question of responsibility for damage to the corn should be deferred.

On April 4, 1941, the Surety Corporation took an assignment from Lytle of his right to the proceeds to be paid by the fire insurance companies on account of the fire loss. All of the corn in the warehouse belonged to the Commodity Credit Corporation, and was stored by it with Lytle under a "Uniform Grain Storage Agreement," which required him to deliver corn of the same kind and quality. Before the salvaging operation was completed, another fire occurred, on May 7, 1941, which destroyed the building and the unsalvaged corn, estimated to be 9,500 bushels. The Surety Corporation then took an assignment of Lytle's claim against the fire insurance companies resulting from the second fire. It was subsequently determined that the fire of May 7 was set by Lytle, and he was convicted of arson. State v. Lytle, 214 Minn. 171, 7 N.W.2d 305.

The Commodity Credit Corporation, as a result of all of the damage to the corn while stored with Lytle, suffered a net loss of $23,062.99, which the Surety Corporation paid in April, 1942. On or about January 8, 1943, it submitted to the fire insurance companies sworn statements of loss on account of each of the fires, and on March 8, 1943, brought this action to recover the fire loss alleged to have resulted from the fire of March 31, 1941. On May 3, 1943, the Surety Corporation brought an action based on the fire of May 7, 1941, which action was removed to the federal District Court and was later dismissed. There were some further complications, but enough has been said to indicate the controlling factual situation.

The defenses asserted by the appellants fire insurance companies were: (1) The loss or damage caused by the fire of March 31, 1941, was not within the coverage of the policies. (2) Sworn statements of loss were not furnished by the insured within the time required by the policies. (3) The policies were voided by various attempts of the Surety Corporation and Lytle to defraud the appellants.

■ The policies covered grain "on storage if in case of loss the insured is liable therefor."[1] Under the warehouse receipts issued by Lytle to the Commodity Credit Corporation the insured was not liable for fire damage to grain on storage, but, under the Uniform Grain Storage Agreement, Lytle was obligated to deliver to the Commodity Credit Corporation the same quantity and quality of grain as he received and to insure it and to collect the insurance in case of loss. It was expressly provided that the terms of the agreement should prevail over terms of warehouse receipts. Therefore, under the agreement, Lytle was liable to the Commodity Credit Corporation for damage by fire to its grain in storage.

■ The appellants argue that the words "liable therefor" as used in the policies mean "liable as a warehouseman therefor" and do not cover liability imposed by a special contract such as that with the Commodity Credit Corporation. We agree with the trial court that the word "liable" as used in the policies is to be taken and understood in its plain, ordinary and popular

---

[1] The pertinent language of the policies is:

"* * * and, provided the insured is liable therefor, this policy shall also cover such merchandise held in trust or on commission, or sold but not delivered; all insured's own or held by insured in trust, or on commission, or sold but not removed, or on storage if in case of loss the insured is liable therefor, while contained in the elevators and warehouses at locations named in the schedule hereto attached, or within 100 feet of said elevators and warehouses and other structures, * * *."

sense. See Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 492, 52 S.Ct. 230, 76 L. Ed. 416; Millers' Mutual Fire Ins. Ass'n v. Warroad Potato Growers Ass'n, 8 Cir., 94 F.2d 741, 742. In Minneapolis, St. Paul & Sault St. Marie Ry. Co. v. Home Ins. Co., 55 Minn. 236, 56 N.W. 815, 817, 22 L.R.A. 390, upon which the appellants rely, the coverage of the policy was specifically limited to the liability of the insured "as carrier and warehouseman." In the policies in the instant suit there is no such limitation.

■ Each of the policies in suit provided that, in case of loss or damage, "a statement in writing signed and sworn to by the insured, shall be forthwith rendered to the company, setting forth the value of the property * * *" and that the company shall have sixty days thereafter to pay for or to replace the property.

Under Minnesota law, the statute of limitations applicable to an action under a policy of fire insurance runs from the time of the fire, and not from the time the claim becomes enforceable by suit, which is sixty days after the loss statement is furnished by the insured. Rottier v. German Insurance Co., 84 Minn. 116, 86 N.W. 888. Delay in furnishing proofs of loss does not affect the insured's right of action upon the policy, but merely postpones the time for bringing suit for the loss. In Mason v. St. Paul Fire & Marine Ins. Co., 82 Minn. 336, 338, 339, 85 N.W. 13, 14, 83 Am.St.Rep. 433, the Supreme Court of Minnesota said:

"* * * Where no forfeiture is provided by the terms of the contract, and the service of proofs of loss within the specified time is not made a condition precedent to the liability of the company, the effect of such failure is simply to postpone the day of payment. No liability attaches to the company, however, until such proofs are furnished; but unless otherwise provided, expressly or by fair implication, it is not important that the proofs be not in fact served within the time stated in the policy."

See, also, Cash v. Concordia Fire Ins. Co., 111 Minn. 162, 166, 126 N.W. 524.

■ Each policy contained a provision that the policy shall be void "if the insured shall make any attempt to defraud the company, either before or after the loss." The setting by the insured of the fire of May 7 voided all fire insurance policies then in force upon the building and contents in so far as he was concerned. The doubtful question in this case is whether that attempt to defraud the insurance companies voided the claim for the fire loss of March 31, which the insured had assigned to the Surety Corporation on April 4. While it is obvious that the insured's attempt to defraud by setting the fire of May 7 was not aimed at the insurance in suit, which covered only a remnant of the corn belonging to the Commodity Credit Corporation, it is a fair assumption that, under Minnesota law, the claim for the fire loss of March 31 could not have been enforced by him had he retained the claim. However, the loss of March 31 was a legitimate loss, and the claim, at the time the insured assigned it to the Surety Corporation, had matured and was subject to no existing defenses or equities. It is true that the fire insurance companies were not liable for payment of the claim until a sworn statement of loss had been furnished and for sixty days thereafter, but those conditions were procedural and did not affect the nature or quality of the claim assigned.

■ The appellants believe that under Minnesota law the Surety Corporation was in no better position to recover for the fire loss of March 31 than the insured would have been in had he retained the claim. The District Court was of the contrary opinion. The insured's assignment of his claim was "an assignment of a debt —a mere chose in action—" which the plaintiff "took subject to all defenses and equities * * *." Ames v. Richardson, 29 Minn. 330, 335, 13 N.W. 137. It reasonably can be believed that the Supreme Court of Minnesota, in using the quoted language, was referring to defenses and equities existing at the time of the assignment. Compare Wyvell v. Barwise, 43 Minn. 171, 172, 45 N.W. 11; Fidelity Mutual Life Ins. Co. v. Clark, 203 U.S. 64,

74, 75, 27 S.Ct. 19, 51 L.Ed. 91; 4 Am.Jur., Assignments, § 95, pages 304, 305.

The writer of the annotation to Ginsburg v. Bull Dog Auto Fire Ins. Ass'n (328 Ill. 571, 160 N.E. 145), 56 A.L.R. 1387, 1391, says:

"There seems to be no dissent whatever, except in a very few early cases, from the now universally accepted rule that, after a loss in respect of insured property has been incurred, the claim to recover that loss may be effectively assigned by the insured, so as to vest in the assignee the absolute right to the insurance, provided, of course the insured himself had that right at the time when the loss was incurred, and that the assignment itself was otherwise valid."

This statement appears to be supported by abundant authority. There is nothing unreasonable in a rule which keeps the subsequent misconduct of an assignor from defeating a duly assigned valid claim for a legitimate fire loss.

It seems probable to us that the Supreme Court of Minnesota, in a case such as this, would rule that the effect of the first fire and the assignment of the claim by the insured to the Surety Corporation was to mature the policies in suit with respect to that claim. The effect of such a ruling would be to reduce the amount of insurance thereafter in force to the extent of the loss sustained. The subsequent incendiary fire would void the policies only with respect to the insurance then remaining in force.

■ Whether the attempt of the Surety Corporation to enforce its claim for loss occasioned by the incendiary fire, and whether its overvaluation of the claim on account of the first fire, constituted attempts to defraud within the meaning of the policies in suit, we think were questions of fact for the trial court to determine, and its findings are binding upon this Court. Such questions, involving as they do the element of intent, are ordinarily left to the trier of the facts. Hamberg v. St. Paul Fire & Marine Ins. Co., 68 Minn. 335, 339, 71 N.W. 388; Hodge v. Franklin Ins. Co., 111 Minn. 321, 323, 324, 126 N.W. 1098; Bahr v. Union Fire Ins. Co., 167 Minn. 479, 481,

482, 209 N.W. 490; Vance on Insurance (2d Ed.), pages 723, 724; Annotation to Columbian Ins. Co. v. Modern Laundry of Indiana, 8 Cir. (277 F. 355), 20 A.L.R. 1159, 1168-1172; Smith v. Royal Ins. Co., 9 Cir., 125 F.2d 222, 223, 224.

The Surety Corporation was confronted with the difficult problem of determining what part of the entire damage done to the corn was attributable to the first fire. There was also some doubt as to whether, legally, the Commodity Credit Corporation was not to be regarded as the insured, instead of Lytle, and as being unaffected by his acts. Compare, Exton v. Home Fire & Marine Ins. Co., 249 N.Y. 258, 164 N.E. 43, 61 A.L.R. 718, and Millers Nat. Ins. Co. v. Bunds, 158 Kan. 662, 149 P.2d 350, 153 A.L.R. 176. Apparently with that in mind, the Surety Corporation assigned its claims for the fire losses to the Commodity Credit Corporation, which thereafter reassigned its interests in the claims to the Surety Corporation. The record indicates that the Surety Corporation, in attempting to state and to enforce its claims, acted upon the advice of reputable counsel. A ruling by this Court that, as a matter of law, the Surety Corporation was attempting to defraud the appellants would not be justified.

■ In determining that, under Minnesota law, the appellants were liable to the Surety Corporation for the fire loss of March 31, 1941, we think the District Court reached a permissible conclusion and one which does no violence to any settled rule of Minnesota law. This Court ordinarily accepts the views of a trial court upon all doubtful questions of local law. Magill v. Travelers Ins. Co., 8 Cir., 133 F.2d 709, 713; Doering v. Buechler, 8 Cir., 146 F.2d 784, 788; Railway Mail Ass'n v. Chamberlin, 8 Cir., 148 F.2d 206, 208; Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Globe Indemnity Co. v. Wolcott & Lincoln, Inc., 8 Cir., 152 F.2d 545, 547. Compare, Reitz v. Mealey, 314 U.S. 33, 39, 62 S.Ct. 24, 86 L.Ed. 21; MacGregor v. State Mutual Life Assurance Co., 315 U.S. 280, 281, 62 S.Ct. 607, 86 L.Ed. 864; Helvering v. Stuart, 317 U.S. 154, 163, 63 S.Ct. 140, 87 L.Ed. 154.

The judgment appealed from is affirmed.