**Dionisio SAINZ GONZALEZ, Plaintiff**

v.

**BANCO de SANTANDER–PUERTO RICO, Defendant**

Civ. No. 86–0842(PG).

United States District Court, D. Puerto Rico.

Dec. 14, 1988.

———

Robert E. Schneider, Jr., Santurce, Puerto Rico, for plaintiff.

Ernesto F. Rodríguez Surís, Hato Rey, Puerto Rico, for defendant.

OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

Dionisio Sainz is suing Banco de Santander–Puerto Rico ("Santander") for wrongfully stopping payment on a cashier's check it had issued payable to him. Sainz also claims Santander invaded his privacy rights by making allegedly untrue statements about him with regard to the cashier's check transaction. Santander filed a third-party complaint against Juan León Saboya, whose personal check drawn on a Santander account Sainz used to purchase the cashier's check.

We have diversity jurisdiction over the case's subject matter since Sainz is a Spanish national, Santander is a Puerto Rican bank and Saboya is a citizen of the Dominican Republic. 28 U.S.C. § 1332. We already have entered a default judgment against Saboya for failing to appear before this Court.

Before us are plaintiff's and defendant's motions requesting, among other things, reconsideration of our July 5 order denying their cross-motions for partial summary judgment and requiring them to brief us on applicable foreign law pursuant to Federal Rule of Civil Procedure 44.1. There is "no genuine issue as to any material fact" in this case. Fed.R.Civ.P. 56(c). A summary of material facts ensues.

On February 28, 1985, Juan León Saboya opened a checking account in the Hato Rey branch of Santander. The original deposit was $100 in cash. The account remained inactive until a $75.00 check dated July 5, 1985, was issued by Saboya.

Due to the monthly bank charges, the account's balance diminished to zero by November 1985. On November 18, 1985, a deposit to the account was made for $26,350, $26,250 in a check and $100 in cash. The check was supposed to be a cashier's check drawn on the Old Stone Bank of Providence, Rhode Island, payable to Mr. Francisco Martínez Millán. The Old Stone Bank cashier's check was endorsed by its supposed payee and Saboya. The check deposit was recorded by Santander in Saboya's account as an "unposted item," *i.e.,* unavailable funds.

On November 20, 1985, Sainz went to Santander's Hato Rey branch with a check for $16,100 payable to him and drawn by Saboya against his Santander account. Saboya gave Sainz the check in consideration for the equivalent of $16,100 in Dominican "pesos" Sainz had given him the prior day in Santo Domingo. Saboya is in the fish export business and apparently needed Dominican currency for business purposes.

Sainz presented the check to a Santander bank officer. She verified Saboya's account balance. There were $100 in available funds and $26,250 as "unposted items." By mistake, however, the officer considered the "unposted items" as available funds.

Before offering to cash the check, the officer asked Sainz about his relationship to Saboya. Sainz explained the currency exchange and gave the officer Saboya's phone number. She called Saboya's residence in the Dominican Republic. Saboya was not there, but his wife confirmed the transaction between Sainz and Saboya.

The officer then told Sainz to cash the check with one of the tellers. Sainz, however, did not want cash. He asked instead to be issued a Santander cashier's check to his order because he was leaving for Spain with the money. The officer acquiesced and issued the cashier's check. In essence, Sainz exchanged the check drawn on Saboya's account for Santander's cashier's check.

Sainz left for Spain with the cashier's check. On November 25, 1985, he went to his bank at home, Banco Guipuzcoano ("Guipuzcoano"). He endorsed the cashier's check payable to the order of Guipuzcoano for deposit in his checking account. He also purchased and received from Guipuzcoano a certificate of deposit for 4 million Spanish "pesetas," partly paid for with the $16,100 cashier's check (2,588,870) Spanish "pesetas" at that time).

On November 27, 1985, Santander was notified, through the clearing house and its correspondent bank in New York that the Old Stone Bank cashier's check deposited in Saboya's account was counterfeit. Of course, the check was returned unpaid. On December 3, 1985, Guipuzcoano presented the Santander cashier's check for payment through the clearing house. On December 18, 1985, Santander stopped payment of its cashier's check. Two days later Santander notified Guipuzcoano by telex of the stop payment.

At plaintiff's request, Guipuzcoano sent Santander a telex on January 20, 1986, requesting an explanation. A day later, Santander informed Guipuzcoano that it stopped payment because its cashier's check was charged to a checking account, the balance of which was produced by the deposit of a check falsified as to its paper and signatures.

As a result of Santander's stop payment, Guipuzcoano annuled the certificate of deposit issued to Sainz; debited his checking account for 2,558,870 Spanish "pesetas" corresponding to the $16,100 of the cash-

ier's check and issued a new certificate of deposit for 1,441,130 pesetas (4,000,000 — 2,558,870). Subsequently, Santander returned the cashier's check to Guipuzcoano and the latter gave it to Sainz.

### I.

Under Fed.R.Civ.P. 56(c) we must render summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." In our July 5, 1988, Opinion and Order we declined to enter summary judgment because we believed we needed to be informed about applicable foreign law in order to ascertain which party was entitled to judgment. We assumed there that the cashier's check issued by Santander was an ordinary negotiable instrument under Puerto Rican law and that it was therefore necessary to join the check's last assignee (Guipuzcoano) and to determine its rights and obligations *vis a vis* Santander in order to fully adjudicate the controversy and accord the requested relief.

Upon careful reconsideration, however, we must conclude that the foregoing assumption was incorrect. A careful reading of the Puerto Rico Supreme Court's opinions in *Herrera v. First National City Bank*, 103 D.P.R. 724 (1975) and *Hato Rey Electroplating, Inc. v. Rodríguez*, 114 D.P.R. 236 (1983), suggests that a cashier's check is more of a cash equivalent than an ordinary negotiable instrument under Puerto Rico law. In *Herrera*, the Court repeatedly stated that cashier's checks are "not subject to countermand" and made clear that their issuance represents a binding "guarantee" by the bank "that the funds represented by the check have been reserved for the benefit of the purchaser." 103 D.P.R. at 728 (official translation). These "special attributes" distinguished cashier's checks from ordinary checks and other negotiable instruments: "Generally they are accepted as if they were money in cash precisely for the certainty which there is in their collection." *Id.* The Court later

reiterated this conclusion in *H.R. Electroplating*, 114 D.P.R. at 244.

Since we conclude that a cashier's check is a cash equivalent under Puerto Rico law, we need not delve into the nature of the transaction between plaintiff and Banco Guipuzcoano or concern ourselves with Spanish Negotiable Instruments law. Instead, we focus solely upon the transaction between plaintiff and defendant.

### II.

The threshold issue here is whether defendant had a right to stop payment on the cashier's check which it mistakenly issued plaintiff. Stated another way, the issue is whether defendant has a right of restitution for money paid (in the form of a cashier's check) to plaintiff under a mistake of fact.

Article 1895 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5121, states the general rule of restitution: "[i]f a thing is received when there was no right to claim it and which, through an error, has been unduly delivered, there arises an obligation to restore the same." Only money paid under a mistake of fact may be recovered under this section. *Quiñones v. Industrial Commission*, 60 P.R.R. 364 (1942); *Silva v. Heirs of Caratini*, 51 P.R.R. 754 (1937).

The Puerto Rico Supreme Court, however, has never squarely addressed the precise issue presented by the facts of this case: whether the rule stated in section 5121 applies where as a result of a mistake or fraud between two parties (Saboya and Santander) money is paid by one of them on account of the other to a third party (Sainz), who receives the same in good faith without knowledge of the mistake or fraud, in payment of a claim by him against the latter. There being no Puerto Rico or other civil jurisdiction authorities which examine this particular issue, we must look, as the Puerto Rico Supreme Court has done, to North American Banking law in order to fill the gaps.[1]

---

1. In the only two cases in which the Puerto Rico Supreme Court has dealt with issues involving cashier's checks, it has relied almost exclusively on North American Banking law authorities. *See H.R. Electroplating* and *Herrera, supra.*

The overwhelming weight of North American authority suggests that no recovery may be had by defendant against an innocent third party such as plaintiff. *See, e.g., Fidelity Mut. L. Ins. Co. v. Clark,* 203 U.S. 64, 27 S.Ct. 19, 51 L.Ed. 91 (1906); *Equilease Corp. v. Hertz,* 634 F.2d 850, 853 (5th Cir.1981); *Strubbe v. Sonnenschein,* 299 F.2d 185 (2nd Cir.1962); *Central Bank & Trust Co. v. General Finance Corp.,* 297 F.2d 126, 129–130 (5th Cir.1961); *Hayes v. Tootle–Lacy Nat. Bank,* 72 F.2d 429 (10th Cir.1934); *Security Nat. Bank v. Old Nat. Bank,* 241 F. 1, 8 (8th Cir.1917). *See also Restatement of Restitution* §§ 13 and 14; 58 C.J.S., *Money Received,* § 28; III G. Palmer, *The Law of Restitution,* § 16.6 at 490–491 (1978); 114 A.L.R. 382, 384–386. The principle cited by these authorities is frequently applied in situations similar to that presented here, where a bank, under a misconception of the state of a depositor's account, pays checks drawn upon it by the depositor, and subsequently, having discovered that the depositor has not suffucient funds to his credit to pay the check, seeks to recover the amount paid on the check from the payee. The rule almost uniformly adopted in such cases is that no recovery may be had against the payee, whatever may be the bank's right of recovery as against the drawer. *See Central Bank, supra,* at 130; *Tootle–Lacy, supra,* at 433; *Security National, supra,* at 8. The time-honored principle was best explained in *Security National,* where the 8th Circuit stated:

> A bank, which honors and pays a note, draft, or check of one of its customers upon his order, in the mistaken belief that the credit balance of that customer is larger than it in fact is, or in the futile hope or mistaken belief that checks or notes which the bank has credited to the account of that customer will be paid in the regular course of business, is estopped, as against the owner of such paid note, check, or draft, from revoking or avoiding such payment on account of such mistake or futile hope: (1) Because of the intolerable delay, uncertainty, and confusion that would result in commercial transactions, if the validity of such payments were to remain in doubt until such possible mistakes should be discovered and corrected; (2) because such a bank may know the state of its own accounts, and it can make such mistakes only through its own laxity or negligence, or its own assumption of the risk of future payments; and (3) because the owner of the note, check, or draft has no means of knowing the state of the customer's account.

*Security National, supra,* at 8. This rule applies with stronger force where the payee has changed his position in reliance upon the payment, as plaintiff has in this case. *See, e.g., Hullet v. Cadick Mill Co.,* 90 Ind.App. 271, 168 N.E. 610 (1929); *Jefferson County v. McGrath,* 205 Ky. 484, 266 S.W. 29 (1924); *Alabama Nat. Bank v. Rivers,* 116 Ala. 1, 22 So. 580 (1896).

In light of the above, we conclude that Santander has no right of restitution against Sainz for the erroneously issued cashier's check, and consequently, no right to stop payment on it. Accordingly, we find that Santander acted improperly in so doing and that it must be held liable for all damages proximately caused by such action. Plaintiff's motion for summary judgment is therefore GRANTED as to the issue of liability. The Court will meet with counsel to explore the possibilities of settlement and/or to set a date for jury trial as to the issue of damages.

IT IS SO ORDERED.