Teasdale v. Stoller.

---

TEASDALE, *Appellant*, v. STOLLER *et al.*

Division One, March 24, 1896.

1. **Judgment:** SATISFACTION: REVERSAL. Money voluntarily paid to satisfy a judgment afterward reversed can not be recovered back, where it appears that the original claim was a just one, and that the judgment was reversed because of a mistake in the procedure.

2. **Appellate Practice:** INSTRUCTION: HARMLESS ERROR. An appellant can not complain of an error in an instruction where such error was in his favor.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Johnson & Lucas* for appellant.

(1) That a party who has paid a judgment, afterward reversed, can recover the same in an action for money had and received is well settled by the current of authorities. *Northwestern Fuel Co. v. Brock*, 139 U. S. 216, and numerous cases therein cited. (2) An assignee, as such, has no power to compromise any claim in favor of, or against, the estate in his charge, without authority, and the mode of obtaining that

authority is specific and exclusive. R. S. 1879, sec.
395; Revision of 1889, sec. 465. (3) The extract
quoted from some unidentified term report in reference
to claims canceled, the order approving the payment of
the judgment, and the order approving the report of
sale, do not constitute an approval of any pretended
compromise. No mention of any compromise or set-
tlement is made in the reports or orders, nor is there
any evidence that any was called to the attention of the
court. It can not be presumed that the court would
have ignored the plain provisions of the statutes con-
cerning compromises. Moreover, the method provided
by the statute is exclusive. *Rozelle v. Harmon*, 103
Mo. 339; *Cunningham v. Anderson*, 107 Mo. 371. (4)
The testimony of the witness Slavens is inadmissible,
even if it had tended to show a compromise, for no au-
thority on the part of the assignee was shown to make
one; but it did not even tend to show that there was any
matter of compromise between the parties. (5) There
is no evidence that Coates attempted to make any com-
promise, or that he understood that he was doing any-
thing more than paying the judgment. And each of
the instructions given by the court of its own motion
assumed that there was a proper subject of compromise,
that Coates had authority to negotiate a compromise,
and that there was evidence that he attempted to exer-
cise it. All these assumptions were unwarranted, and
hence these instructions as well as the one given at the
request of defendants were erroneous. *Wilkerson v.
Eilers*, 114 Mo. 245; *Hardin v. Wright*, 119 Mo. 1.
(6) The instructions asked by plaintiff and refused by
the court properly declared the law and should have
been given, for there was no evidence to support the
issue sought to be raised by defendants. *Wolf v.
Campbell*, 110 Mo. 114.

*Gage, Ladd & Small* for respondents.

(1) Money paid on a judgment afterward reversed was formerly recovered by writ of restitution and is still so recovered in some jurisdictions. If the judgment was voluntarily paid and the original claim was justly, though not legally due, the writ will not issue. *Gould v. McFall*, 12 Atl. Rep. 336, and cases cited. (2) "This action has always been looked upon as an equitable one, and it lies only where defendant ought *ex aequo et bono* to refund the money which he has received; for where there has been no deceit or unfair practice, and he may in good conscience retain it, he can not be compelled to pay it back." It is sufficient if he was morally though not legally entitled to it. *Deysher v. Triebel*, 64 Pa. St. 386; 4 Wait's Actions and Defenses, tit. Money Received, p. 469, *et seq.*, sec. 25; *Crane v. Runey*, 26 Fed. Rep. 16; *Stewart v. Connor*, 9 Ala. 803; *Dupuy v. Roebuck*, 7 *Id.* 484; *Duncan v. Ware*, 5 Stew. & Port. (Ala.) 119; *Green v. Stone*, 1 Har. & J. 405. (3) One creditor of an insolvent who has in good faith received a preference of an honest debt under an assignment, may retain the money though the preference is afterward declared void, and the other creditors receive less in consequence thereof. An honest creditor who honestly receives payment of an honest debt, is entitled in good conscience to retain it, though he could not have recovered it in the first instance. *During's Appeal*, 13 Pa. St. 225; *Carson v. McFarland*, 2 Rawle, 118; *Green v. Stone*, 1 Har. & J. 405; *Savings Institution v. Linder*, 74 Pa. St. 372; *Espy v. Allison*, 9 Watts, 465; *Boas v. Updegrow*, 9 Pa. St. 516. In *During's Appeal*, above cited, Chief Justice GIBSON, in refusing to compel the creditor to refund, page 240, says: "No law is better established than

that what a creditor has conscientiously received he may conscientiously retain. It is illustrated by *Carson v. McFarland*, 2 Rawle, 118, in which a creditor of an insolvent decedent who had received more than his *pro rata* share of the assets was not compelled to refund the excess." (4) When this assignment was made the defendants, Stoller and Hill, did not stand on a simple equality with the other creditors of the bank, but in law and equity they were entitled to be paid in full before the other creditors received anything. It was by a mere slip—their voluntary appearance and proving up their claim before the assignee instead of bringing a suit in equity against him—that this court held they were legally precluded from asserting their original right to a preference. *Stoller v. Coates*, 88 Mo. 515. (5) But whether defendants were originally entitled to a preference or not, the money paid to them can not be recovered back, because they had and still have a just and valid claim against the assigned estate of an equal amount. The law in this state is that a debt due by the assigned estate can be offset against a debt due to it; that is, that while a general claim against an assigned estate can not be offensively used to secure a preference, it may be so used defensively; while it can not be used as a sword, it may be used as a shield. *Ruby v. Watson*, 22 Mo. App. 433; *Smith v. Spengler*, 83 Mo. 408; *Coats v. Ridenour*, 84 Mo. 257.

BRACE, P. J.—On the first of August, 1878, the defendants deposited in the Mastin Bank, of Kansas City, $3,757.56 to be transmitted to the Exchange Bank of Denver, Colorado, and placed to the credit there of one F. P. Earnest.

On the third of August, 1878, the Mastin Bank failed, without having made such transfer, and made a general statutory assignment, for the benefit of its

creditors, to Kersey Coates, who accepted the trust. On the twenty-ninth of January, 1879, the demand of defendants, based upon such deposit, was presented to the assignee and allowed in the general class of demands against the assets assigned, and they received a dividend of twelve per cent thereon.

Afterward, on the twenty-fifth of March, 1880, the defendants instituted against said assignee a suit in equity in the Jackson circuit court to impress upon the assigned assets a trust in their favor for the balance of said demand amounting to the sum of $3,306.66, which resulted in a judgment and decree in their favor on the seventh of January, 1882. An appeal was granted the assignee from this judgment to the supreme court, but no bond was given; and afterward, on the twenty-third day of February, 1882, the assignee paid the amount of the face of said judgment to the defendants and took from them a receipt in full therefor, the defendants agreeing to knock off the interest and some costs, amounting in the aggregate to some twenty odd dollars, and at the April term, 1882, of the Jackson circuit court the assignee, in his term report, reported that the judgment in favor of defendants had been paid, showing the amount thereof, and that their general demand had been canceled, which report was approved by the court.

Afterward, in pursuance of an order of said court, the undisposed of assets of the bank in the hands of the assignee were sold, and John J. Mastin, through his attorney, became the purchaser thereof, and the sale was approved by said court on the twenty-sixth of April, 1884.

In the meantime, the appeal aforesaid, having in due course reached this court, and coming on for hearing, was prosecuted by Mastin's attorneys and resulted, at the October term, 1885, of this court, in a reversal

of the judgment aforesaid of the Jackson circuit court in favor of the defendants against the assignee (*Stoller v. Coates*, 88 Mo. 514), the court ruling, however, in favor of the defendants on the merits, by holding the assets of the bank chargeable with the amount claimed as a preferred demand by reason of the trust, but that defendants had waived their special and preferential right by having their demand allowed as a debt against the general assets, and on this ground alone was the judgment reversed.

Afterward, Mastin brought suit against the defendants to recover back the amount paid as aforesaid by Coates in satisfaction of the judgment in the Jackson circuit court, setting out the reversal thereof by this court, and claiming as purchaser of the assets from the assignee a right of action therefor. He was defeated in this suit on the ground that even if there was an existing demand in favor of the assignee (which was not decided) he did not become the owner of it by his purchase. *Mastin v. Stoller*, 107 Mo. 317, decided at the October term, 1891, of this court.

In the meantime, Coates having died, the plaintiff was on the twelfth day of November, 1887, duly appointed and qualified as his successor, and on the nineteenth day of December, 1887, thereafter, instituted this suit to recover from defendants the money so received by them from Coates on the twenty-third of February, 1882.

At the close of the evidence each party asked for a peremptory instruction for a verdict in his favor, which the court refused, and submitted the case to the jury upon instructions to the effect that they should find for the plaintiff unless they should find from the evidence "that the defendants accepted the sum of $3,306.66 in full payment and satisfaction, compromise, and settle-

ment of the judgment, defendants had on January 7, 1882, recovered against Coates, assignee.''

The jury returned a verdict for the defendants and the plaintiff appeals, complaining of the instructions in that they predicate the right of defendant to a verdict upon the idea of the payment of the judgment by way of *compromise*, when, as they contend, there was no evidence of a compromise, and the assignee had no authority to compromise.

1. It is sometimes laid down as a general rule that money paid on a judgment that is afterward reversed may be recovered back in an action for money had and received. The great majority of the cases which are cited in support of this rule are cases in which payment of the judgment in whole or in part has been coerced by process thereon or otherwise.

These cases are of course not in conflict with the well settled principle of law that one who *voluntarily* pays money with full knowledge of all the facts, and without any fraud having been practiced upon him, can not recover it back because at the time of the payment he was ignorant of, or mistook, the law as to his legal liability.

This doctrine has been frequently applied to payments on judgments that have been afterward reversed, and in some of the cases it has been held that if the payment was voluntary no recovery could he had — making the case turn upon the single fact of voluntary payment. Of this class of cases, the recent case of *Gould v. McFall*, 118 Pa. St. 455, is an example.

There are other cases in which a right of recovery has been maintained although the judgment was voluntarily paid, of which class *Scholey v. Halsey*, 72 N. Y. 578, is an example.

In this latter class of cases it will be found that upon the facts the action was maintained upon the ground

that although the payment was voluntary, yet the defendant having received the money of the plaintiff to which *ex aequo et bono* he was not entitled, the same was recoverable by writ of restitution or by action in assumpsit for money had and received.

But it is believed that no well considered case can be found in which it has been held, where money has been voluntarily paid on account or in satisfaction of a judgment afterward reversed, and the party to whom it was paid, in equity and good conscience was entitled to the same, that it could be recovered back. To so hold would be entirely repugnant to the very principle upon which the action is founded. As was said in an early case by CHASE, C. J.: "The plaintiff can not recover * * * unless the defendant's retaining the money is contrary to equity and right. * * * The defendant may resort to any equitable or conscientious defense to repel the claim of the plaintiff, and may show the justice of his original claim." *Green v. Stone*, 1 Har. & J. 408.

The justice of the defendant's original claim is not only shown by the conceded facts of this case, but the justice of the judgment set aside was established in the judgment of this court upon appeal therefrom. The defendants lost the benefit thereof, merely by "a slip" in their own procedure, and ought not to be compelled to refund the money which they rightfully received, and which in equity and good conscience they may retain. So that if the court committed error in the instruction complained of, in requiring the defendants to show that the payment, made in full satisfaction of the judgment, was also made in compromise of their claim, it was an error in plaintiff's favor, of which he can not complain. The judgment is for the right party, and is affirmed. All concur.