Ritchie v. Carter.

## W. H. RITCHIE et al., Appellants, v. T. S. CARTER et al.; Respondents.

### St. Louis Court of Appeals, March 12, 1901.*

1. **Judgment: WHEN PAYMENT OF, VOLUNTARY.** Payment of a judgment is voluntary, unless made to procure the release of the goods of the party making payment after seizure, or to prevent their seizure by an officer armed with the authority or apparent authority to seize them.

2. ———: ———. In the case at bar, on the whole record it appears that appellants paid the judgment when there had been no seizure or threat of seizure of their goods, and under these circumstances the payment was voluntary.

Appeal from Audrain Circuit Court.—*Hon. Elliot M. Hughes,* Judge.

AFFIRMED.

*George S. Grover* and *George Robertson* for appellants.

(1) The plaintiffs having paid the judgment, afterward reversed, are entitled to restitution. Freeman on Judgments (3 Ed.), secs. 481, 482; Black on Judgments, sec. 955; McJilton v. Love, 13 Ill. 486; 54 Am. Dec. 449, note 454; Gott v. Powell, 41 Mo. 417; Voorhees v. Bank, 10 Pet. 447. (2) The rule of restitution applies not only to the parties to the action, but to their agents and attorneys, who have anything in their hands resulting from the enforcement of the judgment. Galpin v. Page, 18 Wall. 350; Gott v. Powell, 41 Mo. 416;

*This case was received too late to be placed in chronological order.

Railroad v. Brown, 43 Mo. 294; 14 Cal. 680. (3) Although the money was not collected on execution, the payment was not voluntary. Mader v. Cool, 14 Ind. App. 299; 54 Am. St. Rep. 304; Ex parte Walter Bros., 89 Ala. 237; 18 Am. St. Rep. 103.

*T. S. Carter* and *Fry & Clay* for respondents.

(1) The judgment was voluntarily paid off by plaintiff and, therefore, can not be recovered back. "Payment of money upon an illegal and unjust demand, when the adverse party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention or when the other party is armed with apparent authority to seize upon either and the payment is made to prevent it." Wolfe v. Marshal, 52 Mo. 171; Maguire v. The State Law, 62 Mo. 348; Shell v. Rumsey, 39 Mo. App. 265; Campbell v. Clark, 44 Mo. App. 249; Robins v. Catham, 134 Mo. 466-473; Teasdale v. Stoller, 133 Mo. 652; Douglass v. Kansas City, 147 Mo. 429-438.

BLAND, P. J.—In 1895, D. A. Mayer & Brother recovered a judgment in the Sturgeon Court of Common Pleas against George W. Batterton for $923.74, on a store account of items furnished his family. An execution was issued on this judgment, against Batterton and his wife Lizzie, and delivered to Thomas G. Sims, Marshal of the Sturgeon Court of Common Pleas, who levied the same upon the lands of Lizzie Batterton. To prevent her lands from going to sale, she gave bond with W. H. and J. S. Ritchie as sureties, and sued out an injunction against Sims, the marshal. Afterwards she dismissed her injunction suit, whereupon Sims, through his attorneys, Carter & Fry (respondents), filed his motion for an

assessment of damages on the injunction bond, claiming as one of the items of damage an attorney's fee of $150 to Carter & Fry. The motion was upheld and damages in gross in the sum of $268.29 was awarded to Sims against Mrs. Batterton and her sureties in the injunction bond, in which judgment the fee of $150 of Carter & Fry was allowed. Subsequently, Mrs. Batterton carried the case to the Kansas City Court of Appeals on a writ of error, where the judgment was reversed and the cause remanded for new trial. On a retrial of the motion for assessment of damages on the injunction bond, after full hearing, the Sturgeon Court of Common Pleas entered judgment against Sims in favor of Mrs. Batterton and her sureties. This judgment remains in full force. Before the writ of error was sued out, the sureties on the injunction bond (appellants) paid the judgment of $268.29 to the clerk of the Sturgeon Court of Common Pleas under the following circumstances. The clerk was told by one of the parties interested in the judgment that he wanted his money or an execution; he went to the Ritchies and told them what had been said to him. On this information the Ritchies paid the clerk the judgment in full. The clerk testified that he paid out the money to the parties interested, including Carter & Fry. That he paid to Carter, for Carter & Fry, $150 and took a receipt therefor signed by Carter, for Carter & Fry. That he placed the receipt among the papers in the case; that after a writ of error was sued out, Carter got the papers with the receipt, but never returned the receipt. Carter testified that Sims paid him $70 as his part of the attorney's fee and deposited $70 in bank to the credit of Fry, and that he received nothing from the clerk. Fry testified that he received the $70 deposited in the bank to his credit. All the parties, except Carter & Fry, to whom money was paid on the judgment, restored the same to the Ritchies after final judgment on the motion to assess damages.

This suit is to recover of Carter & Fry the amount received by them as Sim's attorneys.

The issues were submitted to the court sitting as a jury. The learned trial judge found that the payment of the judgment by the Ritchies was voluntary and gave judgment for the defendants. From this judgment plaintiffs appealed.

I. That the respondents are proper parties defendant, and that appellants may recover of them if they could have recovered of Sims if he had received and retained the money, is well-settled law. Gott v. Powell, 41 Mo. 416; Railroad v. Brown, 43 Mo. 294; Galpin v. Page, 18 Wall. 350.

II. When the Kansas City Court of Appeals reversed the judgment of the Sturgeon Court of Common Pleas, among other things, it adjudged that the plaintiff in error, Mrs. Batterton "be restored to all things which she had lost by reason of the said judgment." This judgment was put in evidence on the trial by the appellants. While appellants were not, by name, parties to the suit, they were parties to the record and defendants in the judgment, and the judgment of restoration was as much for their benefit and in their favor as if they had been specifically named in the judgment of restoration. Upon the whole record of the proceedings on the motion for damages in the injunction case and proof of the payment made by appellants and the admission by the respondents that they, as attorneys of Sims, had received a portion of the money, appellants were entitled to recover (Gott v. Powell, supra; Hitler v. Hitler, 35 Ohio St. 645), unless the payment of the judgment by them was voluntary. No execution had been issued against them and none had been ordered by the plaintiff or his attorneys. The constable, whose fees had been incorporated in the judgment, had said to the clerk that he wanted his money or an execution to issue; this information was communicated to the appellants by the clerk, whereupon they paid the judgment.

According to some of the authorities, the payment was not voluntary, but under a kind of legal duress. Ex parte Walters Bros., 89 Ala. 237; Swift v. United States, 111 U. S. 29; Insurance Co. v. Steward, 95 Ind. 588. But not so under the rulings of our Supreme Court. In this State the rule is, that a payment of a judgment is voluntary, unless made to procure the release of the goods of the party making payment after seizure, or to prevent their seizure by an officer armed with the authority or apparent authority to seize them. Teasdale v. Stoller, 133 Mo. 652; Wolf v. Marshall, 52 Mo. 171. The constable had no right or authority to order an execution. The right was lodged in Sims, or his attorney of record, exclusively. Davis v. McCann, 143 Mo. 173. On the whole record it appears that appellants paid the judgment when there had been no execution ordered, there was no seizure or threat of seizure of their goods and under the authority of Teasdale v. Stoller and Wolfe v. Marshall, supra, we hold the payment was voluntary and affirm the judgment. All concur.