M. T. WARREN, Appellant, v. ORDER OF RAIL-
WAY CONDUCTORS OF AMERICA, et al. Re-
spondents.

Springfield Court of Appeals, February 6, 1918.

1. **WRIT OF ERROR CORAM NOBIS.** · This ancient writ is frequent-
ly invoked to aid our code to the end that substantial justice may
be done. It is parcel of that procedure which came to us from the
common law. It issues out of the court in which the record lies
and predicates upon errors of fact and not errors of law. It would
lie at common law when the court had proceeded as though a fact
which was material to its right to proceed existed, when it did
not exist, and when the absence of the fact assumed to exist en-
tirely defeated the power of the court to attain a valid result in
its proceeding. Where defendant dies after service of process,
and before judgment, the writ of error *coram nobis* is the proper
remedy.

2. **VACATING RECORD OF SATISFACTION OF JUDGMENT.**
Vacating the record of satisfaction was a mere incident to the
setting aside of the judgment, because the moment the judg-
ment was set aside it ceased to exist. The purpose of the acknowl-
edgment of satisfaction is to destroy the lien on the property of
the judgment debtor. Destruction of the judgment destroys the
lien thereof.

3. **ATTORNEY'S LIEN.** An attorney has a lien, as between himself
and his client, upon the cause of action and judgment for his fee.

4. **AGREED STATEMENT OF FACTS.** Where an attorney, without
any reservation, participated in settling an agreed statement of
facts, and made no special appearance in the agreed statement,
thereby elected to plead to the mertis, and will not be heard, after-
wards, to say that he was not properly called into court.

5. **ERRONEOUS JUDGMENT.** Where a party has been wronged by
an erroneous judgment which is reversed on appeal, it is not
necessary for the party seeking restitution of what he has lost
to bring a separate action, but all the parties being in court, the
court will right the wrong with all possible speed.

6. **VOLUNTARY PAYMENT OF JUDGMENT.** Money paid upon a
judgment with full knowledge of all the facts cannot be recovered.
Payment of money upon an illegal and unjust demand, when the
party is advised of all the facts, can only be considered involun-

tary when it is made to procure the release of the person or property of the party from detention, or when the other party is armed with apparent authority to seize upon either and the payment is made to prevent it. But money paid with full knowledge of all the facts and without fraud cannot be recovered because of ignorance as to legal liability. Money voluntarily paid to satisfy a judgment afterwards reversed cannot be recovered where it appears that the original claim was a just one. There are cases in which the right of recovery has been maintained although the judgment was voluntarily paid on the ground that although the payment was voluntary yet defendant having received it of the plaintiff to which in *ex aequo et bono* he was not entitled, the same was recoverable as for money had and received. On the other hand money paid in satisfaction of a judgment afterwards vacated and the party to whom it was paid was not in equity entitled thereto, may be recovered.

7. **VACATION OF JUDGMENT:** Parties. Judgment of restitution should not be rendered against one who was not entitled to any part of the judgment, and who had received no part thereof.

8. **PRESUMPTION OF DEATH.** Presumption of death arises where a person has absented himself for seven years and has not been heard from.

Appeal from Greene County Circuit Court.—*Hon. Arch A. Johnson*, Judge.

AFFIRMED AS TO M. T. WARREN AND O. T. HAMLIN, AND REVERSED AS TO W. W. HAMLIN AND L. L. COLLINS.

*Hamlin & Hamlin*, for appellants.

*Tatlow & Mitchell*, for respondents.

BRADLEY, J.—On August 21, 1914, plaintiff, M. T. Warren, filed her petition in the circuit court against the defendant, Mutual Benefit Department of the Order of the Railway Conductors of America, and afterwards on January 3, 1917, an amended petition was filed making the Order of Railway Conductors of America, a party defendant. Defendants limited their appearance to a plea to the jurisdiction. The trial court on February 3, 1917, overruled the plea to the jurisdiction, and upon trial, judgment went in favor of plaintiff.

The facts are as follow: Andrew L. Warren, husband of plaintiff, on the 22nd day of February, 1907, had a policy or certificate of insurance then in full force in the Mutual Benefit Department of the Order of Railway Conductors of America, in which plaintiff was named as beneficiary. Warren disappeared on the last-named date, and was not heard of until March, 1917. After waiting more than seven years after the disappearance of her husband, plaintiff filed suit on the policy. It does not appear why, but the case was passed from term to term covering a period of some two years and six months. On February 2, 1917, at the January term of the circuit court upon a trial before the court without a jury, judgment went for plaintiff. On the 5th day of February defendants filed their motion for a new trial and in arrest. No action was taken on these motions until the 24th day of February, at which time the defendants appeared in open court and announced that they were ready and willing to pay the judgment rendered against them, and the motions were thereupon overruled, the judgment and costs were paid, and plaintiff by her counsel in open court acknowledged satisfaction; all of which matters were entered of record. The certificate or policy sued on, being at that time misplaced, plaintiff by her attorneys gave a receipt for the policy which receipt provided that in the event the policy was found, it would be delivered to defendants. Counsel for plaintiff had a contract by which the fee was contingent upon recovery. Upon the payment of the judgment, plaintiff, and her counsel received their respective proportions thereof according to contract.

In these circumstances defendants appeared in court on the 19th day of March, 1917, during the same term at which judgment was rendered, and filed a motion or written suggestions asking that the judgment be set aside, and that plaintiff and her counsel be required to make restitution. The motion or suggestions recited the fact of judgment, payment and satisfaction; and charged that the insured, Andrew

L. Warren, was not dead at the time the judgment was rendered, but was, at that time, and was then, alive. Notice of the filing of this motion, and that it would be called up for hearing on March 24th was duly served upon plaintiff, and was served upon W. W. Hamlin of the firm of Hamlin, Collins & Hamlin, counsel for plaintiff. The hearing of this motion was passed until the 14th day of April, which was still the January term. At the hearing of this motion the parties made the following admissions, upon which the court determined the motion:

"It is admitted that said judgment has been paid and fully discharged and satisfaction entered in open court, and that since the satisfaction of such judgment the plaintiff and defendants have learned that Andrew L. Warren did not depart this life on the 22nd day of February, 1907, as alleged in the petition, or at any other time, but that on the 3rd day of February, 1917, at the time said judgment was rendered, the said Andrew L. Warren was then and still is in full life. It is further admitted that at the time the said judgment was satisfied, to-wit; on the 24th day of February, 1917, the attorney for plaintiff had mislaid the certificate sued upon and was unable to produce the same so as to turn it over to the defendant at the time of the satisfaction of the judgment, and that the defendant in addition to the satisfaction of the judgment, in open court took a receipt from plaintiff showing the satisfaction thereof, and that the certificate was to be turned over to defendant if the same should be found. It is further admitted that neither the plaintiff nor Andrew L. Warren paid any assessments under the said certificate of insurance since the 22nd day of February, 1907, which kept the certificate in force until April, 1907, (1917) as the said Andrew L. Warren was required to do by the constitution and by-laws and the terms of said Order, as well as the terms of said certificate, in order to keep the said insurance provided for by the terms of said certificate in force, and that on the said 24th day of February, 1917, when the said

judgment was satisfied of record as aforesaid, nothing had been paid as dues or premium on the said certificate of insurance by the said Warren since February 22, 1907, because the plaintiff believed her husband Andrew L. Warren had died on or about February 22, 1907. That the defendants have not at any time tendered back to the plaintiff the receipt taken at the time of the satisfaction of the judgment as aforesaid. It is further admitted that the plaintiff in good faith instituted and prosecuted the action to judgment on said insurance policy believing Andrew L. Warren to be dead. It is admitted that Hamlin, Collins & Hamlin had no interest in said judgment other than attorneys for the plaintiff. That under the contract with the plaintiff, O. T. Hamlin was to be paid by the plaintiff as a contingent fee one-half of whatever might be recovered by the plaintiff in this case and that he, the said attorney received from the defendant a check for the full amount of the judgment and cost, and after paying the cost, he accounted to and paid the plaintiff one-half thereof and retained the other half under his said contract.''

The trial court upon the hearing of the motion set aside the judgment and ordered the plaintiff to return to defendants the amount of money she had received as the proceeds of the judgment, and ordered the firm of Hamlin, Collins & Hamlin counsel for plaintiff to return to defendants the amount of money received by them as the proceeds of the judgment, and also ordered the clerk of the court to return to defendants the amount paid to him as costs and execution was ordered to issue to satisfy said order and judgment for restitution. From the action of the court in setting aside the judgment and the satisfaction thereof, and ordering restitution as aforesaid, plaintiff, and her counsel appeal to this court.

Appellants assign as error: (1) The act of the trial court in setting aside the judgment, and the satisfaction thereof; and (2) the order and judgment for restitution against plaintiff, and her counsel.

## I.

Learned counsel for appellants in their brief concede that the trial court had the power and authority during the term which the judgment was rendered, independent of any motion or suggestion, to set aside the judgment for good cause. But, they say, since the fact, that Warren was alive at the time the judgment was rendered, and paid, was called to the attention of the court by the motion, that as a consequence the court in dealing with this motion was bound by the law governing the common-law writ of error *coram nobis*. This ancient writ is frequently invoked to aid our code, so to speak, to the end that substantial justice may be done. In Cross v. Gould, 131 Mo. App. 1. c. 597-598, 110 S. W. 677, Judge NORTONI of the St. Louis Court of Appeals very clearly defines the purposes of this writ, and gives numerous instances where it may be invoked. It is there said: "A writ of error *coram nobis* is parcel of that procedure which came to us with the common law. It issues out of and for the purposes of review by the same court in which the record lies and predicates upon errors of fact as contradistinguished from errors of law. Besides for error in process through the default of the clerk, the writ would lie at common law when the court had proceeded in a case as though a fact which was material to its right to proceed, existed, when it did not exist, and when the absence of the fact assumed to exist, entirely defeated the power of the court to attain a valid result in its proceeding. It may be taken as a proposition settled entirely beyond controversy in the law of this country and England that the writ of error *coram nobis* does not go to errors arising on facts submitted to a jury, referee, or to the court sitting as a jury to try the issues of fact. Nor will this writ lie for the purpose of correcting errors of law." Many instances where this writ may be invoked are cited in Cross v. Gould, supra, and among them are: Where judgment had been given against an insane person, as though sane, it was held

to be such an error of fact not appearing on the record as essentially invalidating the proceedings, the judgment was set aside on writ of error *coram nobis.* [Heard v. Sack, 81 Mo. 610; Adler v. State, 35 Ark. 517.] Where the defendant dies after sevice of process, and before judgment, the writ of error *coram nobis* is the proper remedy to set aside the judgment for the reason it is an error of fact not appearing on the record which renders the judgment invalid. [Calloway v. Nifong, 1 Mo. 223; Dugan v. Scott, 37 Mo. App. 663.] Where it appeared affirmatively by the sheriff's return one defendant was not served, and through error counsel representing the other defendants answered as though they also represented the one not served; it was held that a writ of error *coram nobis* filed at a subsequent term was a proper remedy to set the judgment aside. [Craig v. Smith, 65 Mo. 536; Warren v. Lusk, 16 Mo. 102.] Other instances may be found by reference to Cross v. Gould, supra, but enough here are given to show the character of facts to which the writ of error *coram nobis* goes.

From the above learned elucidation upon the writ of error *coram nobis,* by Judge NORTONI, in the light of the facts of the instant case, it clearly appears that the motion filed to set aside the judgment in the case at bar is in no sense in the nature of a writ of error *coram nobis.* It is appearent that the error of fact upon which the court was asked to act in setting aside the judgment was upon a fact which would be submitted to a jury, or the court sitting as a jury. This fact of course was the alleged death of Warren, without proof of which plaintiff could not recover.

The trial court in its order setting aside the judgment says: "It is therefore ordered, considered and adjudged by the court that the suggestions and motion heretofore filed by the defendants to set aside and vacate the judgment heretofore rendered and satisfaction thereof, and require restitution to the defendants, be and is hereby sustained, and the said judgment as well as the satisfaction thereof on the suggestions

and motion aforesaid as well as under the power of the court to revise and correct during the term its judgments of its own motion, is hereby vacated, annulled and set aside.''

It clearly appears therefore that the learned trial court invoked its power to set aside the judgment independent of any motion or suggestion. It cannot be controverted·that the court found as a fact the death of Warren, when in truth that was not the case. Plaintiff made a prima-facie showing that Warren was dead by offering evidence that he had absented himself for seven years, and had not been heard from. The presumption of his death as a consequence followed, and no evidence was offered to rebut this presumption; the trier of facts therefore found this issue in favor of plaintiff; and upon the discovery by the court that a grave error of finding of fact had been made, the judgment while yet in the breast of the court was set aside. The manner of calling the court's attention to this error we consider not material. Had the learned Judge of the trial court made the discovery that Warren was alive during the term it would have been his duty to set aside the judgment. Section 2022, Revised Statutes 1909, provides that: ''In every case where there has been a mistake or surprise of a party, his agent or attorney, or a misdirection of the jury by the court, or a mistake by the jury, or a finding contrary to the direction of the court, or a fraud or deceit practiced by one party on the other, or the court is satisfied that perjury or mistake has been committed by a witness, and is also satisfied that an improper verdict or finding was occasioned by any such matters, and that the proper party, has a just cause of action or of defense, it shall, on motion of the proper party, grant a new trial, and, if necessary, permit the pleadings to be amended on such terms as may be just.'' The action of the court in setting aside the judgment in the instant case is analogous in principle to the perjury or mistake clause of the statute quoted above. To illustrate: Suppose that instead of relying on the pre-

sumption of death by absence, plaintiff had been relying upon proof of death in fact; and had introduced her evidence, proving by witnesses that Warren was dead; and that the issue of his death was so determined, and judgment rendered; and thereafter and before the term ends, the court is advised that Warren was in fact not dead and this be admitted as in the instant case. Can it be said that the court would need any writ, paper, or pleading to authorize the setting aside of such judgment? We think not. There can be no doubt about the authority of the trial court to control its orders, and judgments during the term at which they were made or rendered, and that such may be modified or set aside in the interest of impartial justice is not controverted. [Ewart v. Pennington, 233 Mo. 695, 136 S. W. 422; Craton v. Huntzinger, 187 S. W. (Mo.) 48.]

Vacating the record of satisfaction was a mere incident to the setting aside of the judgment, and was the natural consequence, because the moment the judgment was set aside it ceased to exist. The only purpose of the acknowledgment of satisfaction is to destroy or release the lien on the property of the judgment debtor. A destruction of the judgment *ipso facto* destroys the lien, so it is not necessary to deal further with the order vacating the acknowledgment of satisfaction.

Upon the facts obtaining here did the court have the authority to order restitution and execution to enforce its order? In Lanyon et al. v. Chesney et al., 209 Mo. 1, 106 S. W. 522, plaintiff and defendant entered into an agreement whereby plaintiff was selling certain property to defendant. Defendant did not comply with the terms of his agreement as to payments, and had managed to get possession, although he had no deed. Plaintiff filed suit for specific performance of the contract to buy, and asked judgment for the balance due, and tendered the proper deed in court. Judgment was given on the pleadings for plaintiffs, and this judgment was declared a lien upon the property

in question. Defendant appealed and this judgment was reversed, and cause remanded; but pending the appeal one of the plaintiffs obtained possession of the property under and by virtue of the judgment after-wards vacated. After the cause was remanded for a new trial and while in possession plaintiffs in vacation dismissed. At the first term thereafter defendants filed their motion asking that the cause be reinstated, and they be given restitution of the premises, and damages for the wrongful detention and for various other reliefs and orders. On the hearing of this motion the court ordered restitution, and gave judgment for damages, and directed that execution issue, but over-ruled the motion as to all other matters, among which was the demand that the cause be reinstated. Defend-ants not satisfied with this judgment appealed and the Supreme Court sustained the action of the trial court in refusing to reinstate the case, and affirmed the order or judgment for restitution and damages. Plaintiffs resisted this motion for restitution and damages in the trial court, and on appeal, on the ground that the cause had been disposed of in vacation, and that, therefore, the court had no jurisdiction in the premises as to any feature of the motion; but speaking anent this subject the Supreme Court said: "We entertain no doubt as to the right of defendants to have restored to them, as against the other parties to this action, any property or property rights of which they were deprived and which plaintiffs acquired under the first judgment, whether by execution or otherwise, and that such right will not in any way be affected by plaintiff's dismissal of their suit after obtaining pos-session of such property. And this, too, without re-gard to the merits of the original cause of action or grounds of defense."

This principle is supported by the following authori-ties: Turner v. Edmonston, 210 Mo. l. c. 421, 109 S. W. 33; Gott v. Powell, 41 Mo. 416, Vogler v. Montgomery, 54 Mo. 577; Jones v. Hart, 60 Mo. 362; Colburn v. Yantis, 176 Mo. 670; Carson's Admr. v. Suggett's Admr.,

34 Mo. 364; Hannibal & St. Joseph R. Co. v. Brown et al., 43 Mo. 294; Board etc. v. Frye, 192 Mo. l. c. 563, 91 S. W. 472. It is well to say here that on the authority of Lanyon v. Chesney, supra, appellants cannot rely upon the fact that there was nothing of substance to set aside after judgment was satisfied, because the principle is the same as in the Lanyon case, where restitution and damages were awarded on motion after the cause had been dismissed in vacation. The fact that most of the orders of restitution in the adjudicated cases have dealt with specific properties does not preclude that restitution may be made where the property obtained may soon lose its identity. The purpose of restitution is to restore to another that which has been in law wrongfully obtained or received.

Appellants contend that when the trial court set aside the judgment that its authority there ceased, and that no authority in law existed to go further, and cite State v. Wallace, 209 Mo. 358, 108 S. W. 542, to support this contention, but the Wallace case will not support that contention. In that case one Wallace was charged with grand larceny, and gave bond for his appearance. He did not appear according to the conditions in the bond, and forfeiture was taken, and *scire facias* issued against the sureties, and judgment was rendered against them. After several stays of execution the sureties filed a motion in the nature of a writ of error *coram nobis* suggesting to the court the death of Wallace at the time forfeiture and judgment were taken. Upon the hearing of this motion the court set aside the judgment against the sureties, and gave judgment in their favor and against the State. From this the State appealed, and the Supreme Court held that the trial court had no authority in that case to go further than to set aside the judgment against the sureties, and that the question of the death of the principal in the recognizance at the time judgment was rendered could be put in issue by answer to the *scire facias,* and the parties there were left exactly as they were before the judgment was rendered against

the sureties. So in the instant case, with the judgment against the defendants set aside, the parties will be as they were before the trial upon the certificate or policy of insurance so far as the trial of that case is concerned. The trial court in the instant case when it set aside the judgment and ordered restitution did not attempt to render judgment in favor of defendants, and said cause is yet pending and undisposed of.

It clearly appears from Lanyon v. Chesney, and authorities cited supra, that the court had ample authority to order restitution so far as plaintiff is concerned. She was already a party to the record, and reasonable notice, which she had, was all that was necessary; but counsel say that even though the court had authority to order restitution as to plaintiff, that no authority existed to justify the court in ordering restitution as to them.

## II.

Appellants, Hamlin, Collins & Hamlin, contend that they were not properly served with notice of the filing of the motion to set aside and for restitution. This notice which contained the substance of the motion or suggestions, was served upon W. W. Hamlin, one of the members of the firm of Hamlin, Collins & Hamlin on March 19, 1917, notifying them that the motion would be called up on March 24th. The motion was not passed upon until April 14th. Appellants sought to limit their appearance, and contended that the court was without jurisdiction under the law to vacate the judgment. It appears that at the hearing of the motion O. T. Hamlin appeared, but sought to limit his appearance for Mrs. Warren only. However, the record discloses stipulations set out in full supra to which he was a party. Counsel, O. T. Hamlin, had what is generally denominated in the profession as a contingent fee contract as above noted by which his fee was conditioned upon recovery. He had a lien (section 964, R. S. 1909) as between himself and client upon the

cause of action, and the judgment for his fee. On the hearing of the motion to set aside and for restitution, an agreed statement of facts was submitted. Appellant, O. T. Hamlin, without *any reservation* participated in settling this agreed statement of facts, which in effect was the evidence which defendants would have offered on the hearing of their motion. This agreed statement of facts was also in effect appellant's (O. T. Hamlin's) answer. He thereby invited the court to pass judgment, which it could not do if it had no jurisdiction. Appellant had he desired to expeditiously get the facts before the trial court, and relieve defendants of the necessity of taking evidence to establish the facts set up in their motion and yet make no waiver as to his plea to the jurisdiction should have in some manner made that reservation in the agreed statement of facts. [State ex rel. v. Grimm, 239 Mo. l. c. 172, 143 S. W. 450.] In Newcomb v. Railroad, 182 Mo. l. c. 707, 81 S. W. 1069, the Supreme Court discussing a question of jurisdiction arising on a motion quash the sheriff's return said: "The defendant could have made a special appearance for the purpose, and moved to quash the return for the insufficiency appearing on its face, and if the court had overruled the motion the defendant could have preserved its exception and have withdrawn, and if the court had then proceeded to render judgment for the plaintiff the judgment would have been reversed on appeal. But a plea to the merits is a general appearance and after that the character of the return is immaterial. There is no injustice in requiring a party, in a matter of procedure, to make his election and abide by his choice. If the defendant was of the opinion that the return was not sufficient to bring it into court and had confidence in its own opinion, it could have remained away and let the plaintiff take his own course. That was a station in the progress of the case where the law requires a party to rely on his own judgment and take the risk of being sustained in the end; he may keep out if he chooses, but if he elects to come in and plead to the

merits, he submits his person to the jurisdiction of the court, and will not be heard afterwards to say that he was not properly called into court.'' We think that in view of these facts the court was clothed with ample power and jurisdiction to render judgment for restitution against counsel as well as against plaintiff. [Turner v. Edmonston, 210 Mo. l. c. 421, 109 S. W. 33; Board etc. v. Frye, 192 Mo. 562, 91 S. W. 472; Hannibal & St. Joseph R. R. Co. v. Brown et al., 43 Mo. 294; Gott v. Powell, 41 Mo. 416.]

In Hannibal & St. Joseph R. R. Co. v. Brown et al., defendant Brown in a former case had secured judgment against the plaintiff railroad company for $105 and costs amounting to $39.15. Defendant in that suit, the railroad company appealed (but it seems that no supersedeas bond was given), and the Supreme Court reversed the judgment. But in the meantime one Lander, attorney for Brown, caused an execution to be issued, and under and by virtue thereof the lands of the railroad company were levied upon and sold, and Lander became the purchaser. The case was to set aside the sheriff's deed to Lander. The Supreme Court in the course of the opinion said: ''When the judgment in the case of Brown v. The Hannibal & St. Joseph R. R. Co., was reversed in this court all of the proceedings had in pursuance of that judgment were vacated, and the defendant was entitled to be restored to the condition in which it stood previous to the judgment, and to restitution of everything that it had lost and which remained in the hands of the adverse party, his agents, attorneys, or privies. Lander was the attorney who gave direction to the whole matter; he was cognizant of all the facts, and therefore chargeable in the same *manner* as Brown himself.'' This was a separate action which is true in a great number of cases respecting the subject of restitution, but in Colburn v. Yantis, 176 Mo. l. c. 686, 75 S. W. 653, the principle is laid down and approved that where one party has been wronged by the erroneous judgment which is reversed on appeal, it is not necessary for the

party seeking restitution to what he has lost to bring a separate action, but all the parties being in court, the court will right the wrong with all possible speed.

## III.

We have disposed of all questions raised by appellants, except the one raising the point that defendants voluntarily paid the judgment, and cannot therefore recover it back after the judgment was vacated. Had defendants paid this judgment with *full knowledge of all the facts*, then that they could not have restitution would undoubtedly be true. [Ritchie v. Carter, 89 Mo. App. 290; Wolfe et al. v. Marshal et al., 52 Mo. 167; Teasdale v. Stoller, 133 Mo. 645; Sears v. Grand Lodge A. O. U. W., 163 N. Y. 374, 57 N. E. 618.]

Ritchie v. Carter, supra, is the case upon which appellants mainly rely as controlling on the question of voluntary payment. The facts in that case are much different from the facts in the present case. The facts there are about as follows: Mayer & Bro. had sued one Batterton on an account for necessaries furnished Batterton and his family; judgment was obtained, execution issued, and Mrs. Batterton's land was levied upon. She filed a bill in equity praying for an injunction to restrain the sale under said execution, and Ritchie signed her injunction bond. Afterwards this injunction suit was dismissed, and Simms, the marshal of the court, against whom the injunction suit was brought, filed a motion asking for damages on the injunction bond. This motion was sustained, and damages awarded in the sum of $268, $150 of which was Carter's fee as an attorney for Simms. Thereafter Mrs. Batterton by writ of error took the case to the Kansas City Court of Appeals and that court reversed the finding of the trial court awarding damages, and remanded the case for a new trial. Upon retrial judgment went in favor of Mrs. Batterton, but in the meantime while Mrs. Batterton's case was pending in the Kansas City Court of Appeals, her sureties on the

injunction bond, Ritchie and Ritchie, paid the $268 damages awarded by the trial court. When the case was reversed and judgment finally given for Mrs. Batterton, all that had been paid as damages was returned except the $150; the suit of Ritchie v. Carter was to recover that amount. The circumstances under which Ritchie and Ritchie paid the damages awarded are: A constable was interested in the fees of the case and insisted that he must either be paid or that execution issue. The clerk informed Ritchie and Ritchie of the constable's demand, and without further ado they paid the $268, knowing that there was a chance that the judgment against them might be reversed, and they made this payment seemingly without protest or reluctance and with full knowledge of all the facts; but not so in the instant case. Defendants paid the judgment believing that Warren was dead, and did not know at the time of payment that he was not dead. The case here under consideration therefore is to be distinguished from Ritchie v. Carter on the principle that in this case defendants had no knowledge of Warren being alive at the time the payment was made. Counsel for appellants strongly urge upon us that the rule is laid down in Ritchie v. Carter that the payment of a judgment where no execution had been issued is voluntary, and cannot be recovered back, even though the judgment upon which payment was made was afterwards reversed. We do not agree that the case turned upon the issue of payment when no execution was issued. Judge BLAND speaking for the St. Louis Court of Appeals in that case says: "In this State the rule is that a payment of a judgment is voluntary, unless made to procure the release of the goods of the party making payment after seizure, or to prevent their seizure by an officer armed with the authority or apparent authority to seize them." As supporting this rule Wolfe et al. v. Marshal et al., 52 Mo. 167, and Teasdale v. Stoller, 133 Mo. 645, are cited. An examination of the Wolfe case discloses these

facts: One Perkins was the owner of a steamboat, and by an instrument in writing sold to Wolfe the privileges of the bar on said boat. By suctom the owner of the boat boarded the bartenders. Afterwards Perkins sold the boat to defendant, Marshal. Some months after this sale Marshal demanded payment of Wolfe for the board of the bartenders. Marshal first demanded $400, and finally settlement was made by the payment of $250. Several years elapsed, and Wolfe brought suit to recover back what he had paid as board for his bartenders. No suit was filed, and the payment was made on a compromise upon the mere threat of suit, with full knowledge of all the circumstances. There the rule is laid down thus: "Payment of money upon an illegal and unjust demand, when the party is advised of all the facts, can only be considered involuntary when it is made to procure the release of the person or property of the party from detention, or when the *other party* is armed with apparent authority to seize upon either and the payment is made to prevent it. But where he can only be reached by a proceeding at law, he is bound *to make his defense in the first instance* (italics are ours) and he cannot postpone the litigation by paying the demand and afterwards suing to recover it back." It was held in Teasdale v. Stoller, supra, that money voluntarily paid to satisfy a judgment afterwards reversed cannot be recovered back where it appears that the original claim was a just one. Money paid voluntarily with full knowledge of all the facts and without any fraud having been practiced cannot be recovered back, because of ignorance as to legal liability. Judge BRACE speaking for the Supreme Court in Teasdale v. Stoller, supra, says: "There are cases in which a right of recovery has been maintained although the judgment was voluntarily paid. [Citing Scholley v. Halsey, 72 N. Y. 578.] In this latter class of cases it will be found that upon the facts the action was maintained upon the ground that although the payment was voluntary, yet defend-

ant having received the money of the plaintiff to which in *ex aequo et bono* he was not entitled, the same was recoverable by writ of restitution or by action in assumpit for money had and received, but it is believed that no well-considered case can be found in which it has been held, where money has been voluntarily paid on account or in satisfaction of a judgment afterwards reversed, and the party to whom it was paid, in equity and good conscience, was entitled to the same, that it could be recovered back. To so hold would be entirely repugnant to the very principle upon which the action is founded. As was said in an early case by CHASE, C. J.: The plaintiff cannot recover unless the defendant's retaining the money is contrary to equity and right. The defendant may resort to any equitable or conscientious defense to repel the claim of the plaintiff and may show the justice of his original claim.'' According to the above, money paid voluntarily in satisfaction of a judgment afterwards reversed cannot be recovered back if in equity and good conscience the party receiving the money is entitled to it. Invoking the homely maxim: "It is a poor rule that won't work both ways," the converse of this proposition becomes also true; and the inevitable conclusion gives expression to another rule of elementary justice, to-wit; that money paid in satisfaction of a judgment afterwards vacated and the party to whom it was paid is in equity and good conscience not entitled thereto, such money so paid can be recovered back. It will be noted that neither the Ritchie case nor the two cases there relied upon deal with payments made after execution was issued, or after levy; or threat to levy, but those cases were concerning payments made with full knowledge of all the facts, and in one instance, the Wolfe case, payment was made when no suit had been filed, and in the other two there was no final judgment. The Teasdale case turned on the proposition that recovery could not be had irrespective of the payment being voluntary or involuntary, because

in equity and good conscience the defendant was entitled to the money received. In Colburn v. Yantis, supra, l. c. 685, the principle is unmistakably and clearly endorsed that money can be recovered back where paid on a judgment afterwards vacated, although there has been no execution issued. There money had been paid on a judgment afterwards vacated. Judge MARSHAL speaking for the Supreme Court said: "However the mistake occurred, the fact is that the plaintiff asserted a right to collect the $826 from the defendants under the judgment, and threatened to enforce it by xz vbfwym and the defendants paid it."

It would appear a vain and useless thing to say that before defendants could involuntarily pay their judgment so as to bring themselves within the rule governing involuntary payments that they must suffer the additional expense incident to execution; and more unreasonable still would it be to require them to wait until an officer had threatened to seize or had actually seized their property. When the judgment is rendered and becomes final, the other party is then armed with the authority to enforce his judgment. In the instant case no one had authority to order execution except the plaintiff or her counsel. (Ritchie v. Carter, supra, Davis v. McCann, 143 Mo. 173, 44 S. W. 795), therefore defendants could not have required the clerk to issue an execution or the sheriff to levy; and neither plaintiff nor her counsel requested, or ordered an execution, but accepted settlement after final judgment, and we hold that such payment was not voluntary. The expression in Ritchie v. Carter, "To prevent their seizure by an officer armed with the authority or apparent authority to seize them" was said arguendo, and was not necessary to the determination of the issues there decided. The rule laid down in Wolfe v. Marshal and Colburn v. Yantis is clearly that where one party is armed with the authority or apparent authority to seize upon either the property or the person of the other party and the payment is made to prevent such seizure,

and that afterwards such authority be vacated or annulled, that then and under such circumstances money so paid may be recovered back. Plaintiff Warren was armed with a judgment; an execution could have been had upon demand; and defendants paid, wholly ignorant that Warren was alive, and we hold that in these circumstances the payment was not voluntary, but was involuntary and may be recovered back. Appellants contend that defendants cannot have restitution until they return or offer to return the receipt given for the misplaced policy at the time payment was made. This receipt in the circumstances had no value, and is therefore of no consequence.

## IV.

It will be noted that the stipulations or admissions of fact upon which the trial court acted in setting aside the judgment and ordering restitution, discloses that Mrs. Warren contracted with O. T. Hamlin, only, and that he individually received the proportionate share of the proceeds of the afterwards vacated judgment. With this showing of facts, we do not believe that the trial court was justified in rendering judgment of restitution against W. W. Hamlin and L. L. Collins, as neither had received any part of the proceeds of the vacated judgment, and had no contract with Mrs. Warren. As between them and O. T. Hamlin, they would be entitled to their proportion of the fee, were it retained by O. T. Hamlin, according to the terms of the contract of partnership, but that would not be any authority to render judgment of restitution against them. Nor would the fact that either or both W. W. Hamlin and L. L. Collins appeared as counsel for Mrs. Warren be sufficient to justify judgment against them. [Huttig etc. Co. v. Shirt Co., 140 Mo. App. 374, 124 S. W. 1094.] Order and judgment for restitution can be made only upon proof, and only against those connected with the record as a party

who has received or as counsel who has received the proceeds or a portion of the proceeds of the vacated judgment. [Lanyon v. Chesney, supra, Railroad v. Brown, supra.]

It follows from the above and foregoing that the order and judgment of restitution against W. W. Hamlin and L. L. Collins be reversed; and the order setting aside the judgment against the defendants and the satisfaction thereof; and the judgment of restitution against plaintiff, M. T. Warren and her counsel O. T. Hamlin, be affirmed; and it is so ordered. *Farrington, J.*, concurs. *Sturgis, P. J.*, concurs in paragraph I, III, and IV. and dissents in paragraph II.