FARMERS NEW WORLD LIFE INSUR-
ANCE COMPANY, INC., a
Washington corporation, Appellant,

v.

William A. JOLLEY, et al., Respondent.

No. WD 39442.

Missouri Court of Appeals,
Western District.

March 15, 1988.

Robert B. Best, Jr., William T. Smith, III, John K. Power, Watson, Ess, Marshall & Enggas, Kansas City, for appellant.

John J. Hager, Janae L. Schaeffer, Jolley, Walsh, Hager & Gordon, Kansas City, for respondent.

Before COVINGTON, SHANGLER and MANFORD, JJ.

COVINGTON, Judge.

This action is brought by plaintiff Farmers New World Life Insurance Company, Inc., (Farmers) against William A. Jolley, et al., (Jolley), attorneys for Carol Ann Baumgarner, beneficiary of insurance policies on the life of her husband, C. Wayne Baumgarner, who disappeared. Farmers sought restitution of the attorneys' fee subsequent to C. Wayne Baumgarner's reappearance after a settlement on the policy was paid by Farmers. Both parties requested summary judgment. The court ordered summary judgment for Jolley. Judgment affirmed.

In July, 1981, Farmers issued two insurance policies with a combined value of $250,000 on the life of C. Wayne Baumgarner. Mr. Baumgarner named his wife, Carol Ann Baumgarner, as beneficiary. On October 19, 1981, it was reported that Mr.

Baumgarner had disappeared and apparently drowned in a boating accident.

On May 7, 1982, Mrs. Baumgarner retained the then-named law firm of Jolley, Moran, Walsh, Hager & Gordon to represent her interests in the insurance policies under a contingent fee contract. Jolley filed two suits on behalf of Mrs. Baumgarner seeking recovery on the two insurance contracts as well as interest, attorneys' fees and additional damages.

Following discovery, Farmers and Mrs. Baumgarner entered into a "compromise settlement." Farmers agreed to pay the full amount of the policies but did not agree to pay interest, attorney's fees or additional damages. A declaratory judgment was entered in one of the lawsuits finding that C. Wayne Baumgarner died by drowning. On December 30, 1982, the parties executed a "Release and Indemnification Agreement" wherein Mrs. Baumgarner agreed that if it could be "proved that C. Wayne Baumgarner did not in fact die by accidental drowning on October 19, 1981," she would repay Farmers the $250,-000 plus interest, costs and attorneys' fees. Pursuant to the agreement, Farmers delivered to Mrs. Baumgarner and Jolley a check for $250,000. Jolley retained twenty-five percent of this amount, $62,294.80, as attorneys' fees under the contingent fee contract. Jolley released its attorney fee lien.

On December 1, 1983, approximately one year after the settlement, C. Wayne Baumgarner was found alive in Maryland. Upon learning that Mr. Baumgarner was alive, Farmers promptly notified Jolley and demanded return of the $250,000 including the attorneys' fee.

On December 5, 1983, Farmers filed suit against Mrs. Baumgarner and was awarded a judgment against her for the full $250,000 along with Farmers' attorneys' fee. Through execution Farmers recovered approximately $137,000 of the $250,-000 judgment. There remains unrecovered $113,000 of the judgment, not including interest, costs or Farmers' attorneys' fees that were also awarded to Farmers. On January 22, 1986, Farmers filed suit against Jolley.

Farmers seeks restitution by use of the court's "equitable powers" and contends that there is no adequate remedy at law. Equitable principles, as distinguished from equitable powers, apply in cases of restitution regardless of whether the case is tried in law or in equity. *Id.;* Restatement of Restitution, Introductory Note at 4 (1937); 3 G. Palmer, *Law of Restitution* § 14.1 at 146 (1946).

Restitution is not a form of action, but a general description of relief afforded. D. Dobbs, *Remedies*, § 4.1 at 222 (1973). The term restitution encompasses quasi contracts, which are actions at law to secure payment of money on the basis of unjust enrichment. Restitution also encompasses equitable remedies such as constructive trust, accounting, equitable lien and subrogation where the equitable powers of a court must be exercised to secure the payment of money, establish an equitable lien or restore specific property. Restatement of Restitution, General Scope Note at 1. In both instances, restitution is obtained to prevent unjust enrichment of one at the expense of another. Restatement of Restitution § 1.

The law of restitution is ill-defined, and there are no rules for determining when there has been unjust enrichment. Recovery of benefits has been granted in many cases involving mistake, fraud, deceit, when a contract is not performed as planned, and in other instances in which it is alleged that one has unjustly benefited at the expense of another.

■ Many cases have denied recovery of benefits in particular circumstances. After determining that one has received benefits at the expense of another, the court then seeks to determine whether or not it would be unjust to permit the enriched party to retain the benefits. In making this determination, the court uses equitable principles in considering the various factors surrounding the relationship such as change of position, hardship, unreasonable delay, unclean hands, bad faith and other equitable principles of defense. Restatement of Res-

titution §§ 139–149. Mere receipt of benefits is not necessarily a basis for restitution if the court does not find that the defendant has been unjustly enriched. *See, e.g., Straube v. Bowling Green Gas Co.,* 360 Mo. 132, 227 S.W.2d 666 (1950), (recovery of benefits denied for excess fees paid to a utility company); *Salisbury R–IV School District v. Western R–I School District,* 686 S.W.2d 491 (Mo.App.1984), (school district could not recover taxes paid to another school district for property located in the first school district when budgets and expenditures had been made).

The facts pleaded in Farmers' petition state a claim in quasi contract for money had and received by alleging that Jolley received money which, in fairness and justice, should be recovered by Farmers to avoid unjust enrichment. Farmers' recovery depends upon whether, under equitable principles, Jolley's retention of the fee would amount to unjust enrichment.

Farmers urges the court to order restitution alleging that this case involves a mistake of the sort which merits recovery of benefits. Farmers states that it paid the insurance proceeds to Jolley and Mrs. Baumgarner under the erroneous belief that it was required to do so. Farmers contends the payment was made under the mistaken belief that the insured was deceased. The facts indicate otherwise.

Farmers obviously had doubts that the insured was dead and prepared a contract to protect itself in the event of that contingency. If Mr. Baumgarner reappeared, the beneficiary, Mrs. Baumgarner, would reimburse and make Farmers whole. Farmers voluntarily agreed to a compromise settlement in order to terminate the pending litigation and its resulting expense, as well as to avoid the risk of liability for additional penalties sought by Mrs. Baumgarner in the lawsuits.

When the settlement was approved, Farmers was satisfied with the promise of Mrs. Baumgarner only. Farmers knew that Mrs. Baumgarner would use a part of the settlement to pay her attorneys. At the time of the settlement, Farmers did not require that Jolley also promise to return the attorney's fee.

Later, when suing Mrs. Baumgarner, Farmers could have joined its claims against Jolley in the same action but did not. For over two years, Farmers pursued its claim against Mrs. Baumgarner without indicating any intention to make a claim against Jolley. All of these factors indicate that Farmers did not use means available to protect itself to insure the return of the entire amount of the settlement.

Farmers has not sought to place itself in the position of the client seeking recovery from the attorney on the basis of the contingent fee contract. There is no claim of subrogation or creditor's bill. In fact, Mrs. Baumgarner offered an assignment of any claim she might have against Jolley and Farmers rejected it.

Farmers is now dissatisfied with the settlement agreement made with the beneficiary because Mrs. Baumgarner did not perform her promise. Farmers wants Jolley to give up its attorney's fee for which, under the settlement agreement, Mrs. Baumgarner agreed to reimburse Farmers without mention of looking to the attorney for a return of the fee. The situation is one of a contract in which one of the parties, Mrs. Baumgarner, was unable completely to perform. Jolley is a third person, not a party to the contract, and not the insurer of the promise of its client.

Most of the cases cited by Farmers are cases in which the defendant benefited directly from acts by the plaintiff. Here, Jolley was not a party to the contract between Farmers and Mrs. Baumgarner. When restitution is sought from a third person, other considerations are present.

The case of *Fidelity Mutual Life Ins. Co. v. Clark,* 203 U.S. 64, 27 S.Ct. 19, 51 L.Ed. 91 (1906), is similar to the one under consideration. In that case, an insurance company was denied recovery of an attorney's fee when an insured missing husband reappeared after a judgment for the beneficiary was satisfied. The beneficiary had assigned a share of the policies to the attorney as a contingent fee. The court found the attorney had received the payment in

good faith and refused to disturb the legal title.

Farmers contends the Missouri Supreme Court tacitly rejected the reasoning and conclusions of *Clark* in the case of *Warren v. Order of Railway Conductors of America*, 199 Mo.App. 200, 201 S.W. 368 (1918). In *Warren*, after the husband had been missing for ten years, the wife beneficiary filed suit on the policy. Judgment for the beneficiary was entered on February 3, 1917. The judgment was satisfied on February 24, 1917, and the beneficiary paid her attorney his fee. Early in March 1917 it was learned that the insured was still alive. On March 17, 1917, the insurer's attorney appeared in court and asked the court to set aside the judgment. The court did set aside the judgment and ordered judgment for restitution against plaintiff beneficiary and her counsel.

*Warren* can be distinguished from the present case. In *Warren*, the insurance company's motion for restitution was made less than a month after having paid the insurance policy proceeds to the plaintiff and her counsel, and the trial court vacated the judgment in the same term in which the judgment was originally entered, during which time the trial court had authority to control its orders and judgments. Additionally, the insurance company in *Warren* litigated the dispute. Once the judgment was entered against the insurance company, the insurance company's act of satisfying the judgment was an "involuntary payment" because the beneficiary was "armed with the authority or apparent authority to seize upon either the property or the person" of the insurance company. *Id.* 201 S.W. at 374. The court stated that where an involuntary payment is made to prevent such seizure and afterwards the authority of the beneficiary is vacated or annulled, then and under such circumstances, money so paid may be recovered. *Id.* Here, Farmers settled Mrs. Baumgarner's claim and made a voluntary payment to avoid litigation and its resulting expense. Here, more than two years had passed between the time of reappearance of Mr. Baumgarner and the filing of the instant suit.

Plaintiff cites *State Farm Mutual Ins. Co. v. Sabourin*, 574 S.W.2d 8 (Mo.App. 1978). In that case, State Farm paid defendant insured the amount of his claim for an injury by one who was believed to be an uninsured driver. Subsequently, insured did recover from the other party. State Farm sued for restitution of the amount paid to the insured. The insured contended he should be able to retain the amount of the fee he paid to the attorney who represented him in the original claim against State Farm. Judgment was awarded to State Farm for the entire amount and defendant was not allowed to deduct the amount he paid his attorney.

*Soubrin* differs from the instant case. The suit was against the beneficiary who was liable for the entire amount paid in a settlement. In the present case, the beneficiary was liable to the insurer under a settlement agreement which included a promise to repay the entire amount if the husband reappeared. The fact that Farmers could not collect all of its claim against the beneficiary should not make the attorney for the beneficiary, who was not a party to the contract, return the attorney fee.

Consideration of all the facts results in a conclusion that defendant Jolley was not unjustly enriched at the expense of Farmers. Jolley performed services for the client which resulted in a settlement that was satisfactory to both parties. At the time, Farmers was satisfied with the sole promise of the beneficiary. Risks are covered by the contract.

Where an insurer, at the demand of the insured or the beneficiary, makes a payment under the policy, fully conscious that there is uncertainty as to whether or not payment is due, the insurance company may be said to assume the risk of payment in order to avoid difficulty which might arise from nonpayment. In such case, the insurer is not entitled to restitution, even from the beneficiary, except as the parties otherwise agree. *See* Restatement of Restitution §§ 11(1), (2), illustration 2 & comments a, b & c. See also *annot.* 79 ALR3d 1113, 1120–21 (1977); *annot.*, 167 ALR 470,

476–78 (1947). Thus, Farmers' rights are governed entirely by the Release and Indemnification Agreement which provides a contractual right to recovery from Mrs. Baumgarner alone.

■ Farmers further contends that the court should nullify the contingent fee agreement between Jolley and Mrs. Baumgarner on the grounds that (1) there was no *res* created out of which the fee could be paid to Jolley, and (2) the fee is excessive because the ultimate result of the agreement was of no benefit to the client. An extended discussion of Farmers' argument and authorities would have no precedential value. Farmers' argument that no *res* was created is erroneous. The $250,000 settlement provided the *res* from which attorneys' fees were paid. As to the alleged excessiveness of the fee, the cases cited by Farmers are ones in which a client is contending that the attorney's fee is excessive. Mrs. Baumgarner was free to use the settlement proceeds to pay a fee to her attorney. She, herself, has neither objected nor requested that Jolley return the fee.

Farmers may not recover the fee in a suit against Jolley for restitution.

Judgment affirmed.

All concur.